USDS SDNY
DOCUMENT
ELECTRONICALLY FIL[.
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KARTHIKEYAN V. VEERA,

             Plaintiff,

    v.

AMBAC FINANCIAL GROUP, INC.,
AMBAC PLAN ADMINISTRATIVE
COMMITTEE, SEAN T. LEONARD,
GREGG L. BIENSTOCK, DIANA
ADAMS, ROBERT EISMAN, TIMOTHY
STEVENS, ANNE GILL KELLY and
JANE AND JOHN DOES 1 THROUGH
10,

             Defendants.

Case No: 10-cv-4191-HB

### STIPULATION REGARDING
### PROTOCOL FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY
### STORED INFORMATION

This protocol is intended solely to facilitate the production of ESI ("electronically stored information") in the above-captioned matter pursuant to Federal Rules of Civil Procedure, to avoid misunderstandings concerning ESI and to reduce the cost of litigation and to inform the Court of the areas in which the parties disagree. The protocol is not intended to expand (or contract) each party's obligations under the Federal Rules of Civil Procedure or applicable local rules or any orders by the Court.

1.    **Scope of Data Subject to Discovery**

(a)    **Timeframe for ESI Discovery**

**Defendants' Position**

Defendants believe the relevant time frame for ESI discovery should be the timeframe used in the Securities Action (Civil Action No. 08-00411-NRB), since discovery in this matter will coordinate with discovery in the Securities Action. Although the timeframe for ESI discovery has not yet been set in the Securities Action, the Securities class period ends April 23, 2008, the last date on which Ambac Financial Group, Inc. is alleged by this and the Securities Action to have made disclosures that negatively impacted its stock value. Accordingly, Defendants urge the Court to delay setting the timeframe for ESI discovery in this matter until one is set in the Securities Action, or until the Court determines the relevant time period for this action in its decision on Defendants' Motion to Dismiss due August 18, 2010, or Plaintiffs' Motion for Class Certification, if any. Alternatively, and at a minimum, Defendants urge the Court to set an appropriate timeframe for ESI discovery that ends no later than April 23, 2008.

**Plaintiff's Position**

Plaintiff suggests that the relevant time frame for ESI discovery should be April 25, 2006 through April 23, 2009. This time frame would start the ESI period six months before the beginning of the Class Period and would end it on the last day of the Class Period. This is a reasonable approach which is similar to ESI protocols entered by other courts. Because the parties are at the initial stage of this litigation, Plaintiff also proposes that either side be able to request the other party to preserve ESI beyond this timeframe upon a good faith need or upon

agreement of the parties. There is no need to delay setting the ESI time frame because discovery is proceeding now in this Action.

**(b)    Custodians**

The parties agree to meet and confer in good faith to identify the custodians from whom ESI responsive to requests for production shall be collected and whose email accounts shall be searched using the agreed-upon search terms.

**(c)    Search Terms**

The parties agree to meet and confer in good faith to identify the terms to be used when searching for potentially responsive ESI. Once a final search terms list is agreed to, the proponent of discovery ("Requesting Party") may request additional search terms based on a good faith need or by agreement. In agreeing upon such terms, the parties in no way agree that any ESI having one or more such terms shall be produced prior to review for responsiveness and privilege.

**(d)    Sources**

The parties agree to search for and produce any relevant records from the custodians identified pursuant to section 1(b) above, regardless of the location of the custodian or equipment, including from the following sources:

       i.      the hard copy files of identified custodians;

      ii.     the active email accounts of identified custodians, as preserved in the vault;

     iii.     the active file server directories used by each identified custodian to store electronic records;

     iv.     the "M" drive directory of each identified custodian;

     v.     removable or portable media (e.g., hand held devices including cell phones, PDAs, BlackBerries, and iPods, thumb or flash drives, external

> hard drives, CD or DVD) to the extent interviews with the custodian
> and/or the FED. R. CIV. P. 30 (b) deposition of the Company's document
> custodian indicate that such media may contain relevant information; and

vi.     any internal websites.

#### (e)     Not reasonably Accessible Data

After receiving requests for document production, the party responding to discovery ("Producing Party") shall disclose to the Requesting Party the existence of ESI that it believes is responsive, including any responsive ESI that may be located in (1) remote locations such as branch, satellite, or subsidiary offices, (2) off-site or third-party data storage either in physical removable media or real-time data hosting/archive or (3) deleted information, back-up and archival data, but that it objects to producing because the information is not reasonably accessible because of undue burden or cost. The disclosure shall include reasonably available information about the format and location of the information claimed not to be reasonably accessible, and why the requested production would impose undue burden or is unreasonably costly.

The Parties will meet and confer concerning such information that has been identified as not reasonably accessible, but a Producing Party shall not have an obligation initially to search or produce from sources of ESI that it discloses as information that is not reasonably accessible because of undue burden or cost, and no such obligation will exist unless and until a motion to compel is filed by the Requesting Party and is ruled upon by the Court. The parties agree that the Producing Party shall pay all costs related to reasonably accessible ESI. Nothing in this protocol, however, should be interpreted to mean that a Producing Party cannot apply to the Court for the cost of retrieving and producing ESI from a source that is not reasonably accessible where substantially the same ESI can be produced from a reasonably accessible source.

### (f)    Privilege Logs

The Producing Party will produce privilege logs in Excel, Word, or a similar electronic format that allows text searching and organization of data. A Producing Party will produce privilege logs within a reasonable time and on a rolling basis as its document productions are made. The production of a privilege log for a custodian will be not less than 14 days prior to a custodian's deposition.

### 2.    Form of Electronic Information Production

### (a)    Structured Data

Before producing ESI from databases, each party shall first produce a list of databases, if any, that are responsive to a request for production. The list should include a general description of the contents/functions of the databases, relevant fields and timeframe. Once the Requesting Party has reviewed this information, it may request relevant data from the database in the form of a query to be run across the relevant database. Nothing in this paragraph shall prevent the Parties from agreeing upon alternative methods for producing data from databases.

### (b)    Unstructured Data

E-mail and user-generated ESI will be produced in single-page Tagged Image File Format ("TIFF") with a load file containing basic metadata and extracted text (one text file per document) as set forth below. For all unstructured data, each party will provide load files in a reasonable, industry-standard format each party may identify later. Load files will identify source/attachment (parent/child) documents. Redacted files will be produced with searchable text. Excel, Lotus 123 or other spreadsheet programs will be produced in native format from the outset.

The following metadata fields will be produced for each file:

| FIELD NAME | DESCRIPTION |
|------------|-------------|
| BegBates | Beginning Bates number |
| EndBates | Ending Bates number |
| BegAttach | Beginning Attachment number |
| EndAttach | Ending Attachment number |
| DocType | Type of document (e.g., email, attachment, efile) |
| Document extension | E.g. xls, doc, pdf |
| Author | Email author, Efile creator |
| Recipient | |
| cc | |
| bcc | |
| Sent date | |
| Received date | |
| Create Date | |
| Modified Date | |
| Parent Date | |
| Title | Email subject, Efile filename |
| Custodian | |
| Extracted Text | |

If production of a particular type of file in TIFF or native format would be unreasonable or cause undue burden for either the Producing or Requesting party, the parties shall meet and confer to find a workable solution before bringing objections or motions to the Court.

### 3.    Duplicates

A Producing Party may but is not required, to apply universal or global de-duplication to all unstructured data to avoid producing multiple copies of the same document. For example, an email sent by one employee and received by four other employees may be produced once rather than six times.

### 4.    Bates Numbering and Confidentiality Designations

Each page of a produced image shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable), redactions, and any other internal tracking number that the Producing Party may choose to use. Electronic data produced in discovery may be labeled with confidentiality designations.

In the case of TIFF images, confidentiality legends shall be "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. For materials produced in native format, the Producing Party shall supply fielded data identifying the confidentiality treatment of each document designated for confidentiality. A failure to make a designation through fielded data may be corrected in the same manner as inadvertent production of privileged materials or mistaken designations of confidential materials as provided in the STIPULATION AND ORDER GOVERNING THE PRODUCTION AND EXCHANGE OF CONFIDENTIAL MATERIAL.

## 5.    Production Media

A Producing Party shall produce documents that it produces in an electronic image form

on CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic

media as the parties may hereafter agree upon (the "Production Media").  The Bates Number

range(s) of the materials on the Production Media shall be contained on the Production Media,

and where not practicable to do so may be provided in an accompanying letter.  If the Producing

Party encrypts or "locks" the production, the Producing Party shall include with the production

an explanation of how to decrypt the files.

If the Producing Party provides the Production Media directly to the Requesting Party by

CD-ROM, DVD, or by external hard drive, as opposed to allowing access by computer or

electronic means, the Producing Party, to the extent possible, shall produce all documents in the

following format (unless the Requesting Party requests otherwise):

i.    IMAGES: Single-page TIFF (Tagged Image File Format) files, ideally with filenames matching the Bates number of the page.

ii.    OCR: Single-page TXT files, one per image, in the same folder as the image it represents and named in the same manner as the image.

iii.    LOAD FILES: (should be located either at the root of the production volume or in a DATA folder)

a.    Images and OCR: This must be a Summation .DII file, with the @T identifier token on the first line of each document entry.

b.    Coding: This should be in comma-delimited format, with fieldnames on the first line.

iv.    NUMBERING: There can be no spaces in the bates numbers of a Summation database.

## 6.    Exceptions to Protocol

If the forms of production allowed by this protocol present an undue burden or cost for a

Producing Party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any party may file a motion to seek individual relief from this protocol.

### 7.   On-site Inspections

On-site inspections of electronic media shall only be permitted if agreed to by the parties or if good cause and specific need have been demonstrated.

### 8.   Discovery and Admissibility

Nothing in this protocol shall be construed to affect the admissibility of any document or data. All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a party as to which that party stipulates, are preserved and may be asserted at any time.

### 9.   Definitions

Except as otherwise defined herein, all terms are defined pursuant to The Sedona Conference Glossary: E Discovery and Digital Information Management (May, 2005 Version) available at http://www.the sedonaconference.org/.

Dated:  New York, New York
      July 12, 2010

/s/ Caitlin Duffy
SQUITIERI & FEARON, LLP
Stephen J. Fearon, Jr.
Caitlin Duffy
Garry T. Stevens, Jr.
32 East 57th Street, 12th Floor
New York, New York 10022

*Attorneys for Plaintiff*


/s/  Jamie M. Kohen
MORGAN, LEWIS & BOCKIUS LLP
Jamie M. Kohen (jk0273)
101 Park Avenue
New York, NY 10178-0060
Phone: (212)309-6343
Fax:    (212)309-6001
Email: jkohen@morganlewis.com

*Attorney for Defendants Ambac Financial Group,*
   *Inc., Ambac Plan Administrative Committee, Sean*
   *T. Leonard, Gregg L. Bienstock, Diana Adams,*
   *Robert Eisman, Timothy Stevens, and Anne Gill Kelly*

**IT IS SO ORDERED.**

Dated:

Honorable Harold Baer, Jr.
UNITED STATES DISTRICT COURT JUDGE