# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

———————————————————————
                                          :
KARTHIKEYAN V. VEERA,                     :
                                          :
                        Plaintiff,        :        Civil Action No. 10-cv-4191 (HB)
            - against -                    :
                                          :        **ORAL ARGUMENT REQUESTED**
AMBAC FINANCIAL GROUP, INC., et al.,      :
                                          :
                        Defendants.       :
———————————————————————:


———————————————————————————————

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS
———————————————————————————————

MORGAN LEWIS & BOCKIUS LLP
Gregory C. Braden (admitted pro hac vice)
Christopher A. Weals (admitted pro hac vice)
1111 Pennsylvania Avenue NW
Washington, DC  20004
Phone: (202) 739-3000
Fax:    (202) 739-3001
Email:  gbraden@morganlewis.com
            cweals@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Jamie M. Kohen (jk0273)
101 Park Avenue
New York, NY 10178-0060
Phone: (212) 309-6343
Fax:    (212) 309-6001
Email: jkohen@morganlewis.com

## TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITY..................................................................iii

I.    INTRODUCTION...................................................................... 1

II.   BACKGROUND ........................................................................ 4

      A.    The Parties ................................................................ 4

      B.    Savings Incentive Plan ............................................. 5

            1.    The Plan's Investment Options........................... 6

            2.    Plan Administration .......................................... 7

      C.    Plaintiff's Allegations ............................................. 7

      D.    Economic Context of Plaintiff's Allegations.................... 8

III.  STANDARD OF REVIEW ...................................................... 10

IV.   ARGUMENT ........................................................................ 11

      A.    The Plan Mandates The Offering Of Ambac Stock, Therefore Neither The Plan Nor ERISA Gives The Fiduciaries Discretion To Eliminate The Stock Fund And Count I Fails To State A Claim ................................ 11

      B.    The Plan Fiduciaries Were Not Required To Diversify Out Of Ambac Stock Since The Plan Is Exempt From ERISA's Duty Of Diversification For It's Investment In Employer Securities .......................... 14

      C.    Even If The Fiduciaries Could Be Deemed To Have Discretion Under The Plan And ERISA To Remove The Stock Fund From The Plan, Count I Fails To Plead Facts Establishing An Abuse Of Discretion By Any Defendant .................................................................. 16

            1.    The Abuse Of Discretion Standard Of Review Has Been Widely Adopted And Applied By The Courts To Dismiss Inadequately Pled Claims That Fiduciaries Breached Their ERISA Duty Of Prudence By Failing To Sell Employer Securities. .................................. 16

            2.    The Complaint Fails To Allege Facts Establishing That Any Defendant Abused His Or Her Discretion And Therefore Fails To Overcome The "Presumption Of Prudence."............................ 19

            3.    The "Artificial Inflation" Claim Fails, In Any Event, Because Defendants Could Not Have Prevented The Alleged Losses Claimed By Plaintiff. .............................................. 22

            4.    Even If Count I Is A Viable Claim, It Cannot Extend Beyond April 23, 2008 ................................................ 24

i

## TABLE OF CONTENTS continued

PAGE(S)

D.    To The Extent The Complaint Alleges That The Plan Administrative Committee Breached Its Fiduciary Duty Of Prudence By Not Disclosing Information Concerning Ambac's Financial Status, That Claim Is Not Cognizable Under ERISA .................................................................................. 25

E.    Plaintiff's Breach Of Loyalty (Count II) And Failure To Monitor (Count III) Claims Fail As A Matter Of Law Because They Are Derivative And Conclusory ........................................................................................................ 27

    1.    Count II (Conflict of Interest) Does Not Pass Muster Under *Twombly* and *Iqbal* ........................................................................ 27

    2.    Count III (Failure to Monitor Other Fiduciaries) Fails As a Matter Of Law Because It Includes Only Conclusory Allegations .................... 28

F.    Even Assuming Discretion To Remove Ambac Stock From The Plan Existed, Only Defendants Leonard And Stevens Are Proper Individual Defendants ........................................................................................................ 30

    1.    The Company Was The Plan Sponsor And Is Not A Proper Defendant .............................................................................................. 31

    2.    The Plan Administrative Committee Is Not A Proper ERISA Defendant .............................................................................................. 32

V.    CONCLUSION ............................................................................................... 33

## TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................. passim

*In re Avon Products, Inc. ERISA Litigation*, Case No. 05-Civ.-6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009), *aff'd by district court*, 2009 WL 884687 (S.D.N.Y. Mar. 30, 2009*)* ................................................................................. passim

*Basic v. Levinson*, 485 U.S. 224 1988 ...............................................................................24

*In re Bausch & Lomb, Inc. ERISA Litigation*, No. 06-CV-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) ...........................................................14, 18, 25

*In re Beazer Homes USA, Inc. ERISA Litigation*, No. 07-0952, 2010 U.S. Dist. LEXIS 33476 (N.D. Ga. Apr. 2, 2010) .......................................................................15

*Beck v. PACE International Union*, 551 U.S. 96 (2007) ...................................................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................4, 10, 27, 29

*Benitez v. Humana, Inc.*, No. 3:08cv-211-H, 2009 WL 3166651 (W.D. Ky. Sept. 30, 2009) ....................................................................................................................19

*Brieger v. Tellabs*, 629 F. Supp. 2d 848 (N.D. Ill. 2009) .............................................1, 28

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009)...................................................................21

*Brown v. American Life Holdings, Inc.*, 190 F.3d 856 (8th Cir. 1999) ............................14

*In re Calpine Corp. ERISA Litig., No. C-03-1685 SBA,* 2005 WL 1431506 (N.D. Cal. March 31, 2005) ........................................................................................................26

*In re Citigroup ERISA Litigation*, Case No. 07-Civ.-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009), *appeal docketed*, No. 09-3804-cv (2d Cir. Sept. 9, 2009) .................................................................................................................. passim

*In re Coca-Cola Enterp. Inc., ERISA Litigation*, No. 06-953, 2007 WL 1810211 (N.D. Ga. June 20, 2007) ..................................................................................................19

*In re Computer Sciences Corp. ERISA Litigation.*, 635 F. Supp. 2d 1128 (C.D. Cal. 2009), *appeal docketed*, Nos. 09-56190, 09-56248 (9th Cir. July 31, 2009) .............................................................................................................................20

# TABLE OF AUTHORITIES continued

PAGE(S)

*Crocker v. KV Pharmaceutical Co. et a*l., 2010 WL 1257671 (E.D. Mo. Mar. 24, 2010) ...............................................................................................................17

*Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002) ........................22, 31, 32

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) ...........................................12

*In re Dell, Inc. ERISA Litigation*, 563 F. Supp. 2d 681 (W.D. Tex. 2008) .......................19

*David v. Alphin*, Case No. 3:07CV11, 2008 WL 5244483 (W.D.N.C. Jul. 23, 2008) ...............................................................................................................33

*DiFelice v. US Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd* 497 F.3d 410 (4th Cir. 2007)................................................................................................1

*Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir. 1983) ................................................20

*Dynegy, Inc. ERISA Litigation*, 309 F. Supp. 2d 861 (S.D. Tex. 2004) ...........................29

*Edgar v. Avaya*, 503 F.3d 340 (3d Cir. 2007).............................................................. passim

*Fink v. National Sav. and Trust Co.*, 772 F.2d 951 (D.C. Cir. 1985) ...............................15

*Fisher v. JP Morgan Chase & Co.*, No. 03 Civ. 3252 (SHS), 2010 WL 1257345 (S.D.N.Y. March 31, 2010)...................................................................................18, 30

*In re Ford Motor Co. ERISA Litigation*, 590 F. Supp. 2d 883 (E.D. Mich. 2008)............17

*Gearren v. McGraw-Hill Co's, Inc.*, 690 F. Supp. 2d 254 (S.D.N.Y. 2010)*, appeal docketed*, No. 10-792 (2d Cir. Mar. 4, 2010)....................................................1, 18, 25

*Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir. 1985)..................................31

*Harris v. Amgen, Inc., Case No. Cv 07-5442*, 2010 WL 744123 (C.D. Cal. March 2, 2010) ...............................................................................................................30

*Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007) .............................................23

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009).........................................................5

*Herrera v. Wyeth*, Case No. 08-Civ.-4688, 2010 WL 1028163 (S.D.N.Y. Mar. 17, 2010) ...............................................................................................................18

iv

## TABLE OF AUTHORITIES continued

PAGE(S)

*Hill v. BellSouth Corp.*, 313 F. Supp. 3d 1361, 1369 (N.D. Ga. 2004) ............................26

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) ........................................12, 13, 31

*In re Huntington Bancshares, Inc. ERISA Litigation*, 620 F. Supp. 2d 842 (S.D. Ohio 2009) ........................................................................................................................28

*In re ING Group, N.V. ERISA Litigation*, No. 09-400, 2010 U.S. Dist. LEXIS 44238 (N.D. Ga. Mar. 31, 2010)..............................................................................13

*Johnson v. Radian Group, Inc.*, No. 08-2007, 2009 WL 2137241 (E.D. Pa. July 16, 2009) ....................................................................................................................19, 20

*Keach v. U.S. Trust Co.*, 419 F.3d 626 (7th Cir. 2005) ....................................................20

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008)......................... passim

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995)....................................................1, 17, 22

*Lanfear v. Home Depot, Inc.*, Case No. 1:07-CV-197-ODE, 2010 WL 2427413 (N.D. Ga. June 7, 2010) ..............................................................................................30

*In re Lehman Brothers. Secs. and ERISA Litigation,* 683 F. Supp. 2d 294 (S.D.N.Y. 2010)..............................................................................................1, 18, 19

*In re Lehman Brothers Secs. and ERISA Litigation*, Case No. 09-MD-2017, 2010 WL 354937 (S.D.N.Y. Feb. 2, 2010)*, appeal docketed*, No. 10-712 (2d Cir. Mar. 2, 2010)...................................................................................................................1

*Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861 (N.D. Ill. 2009) ...................................23, 29

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)............................................................12, 13

*Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) ........................................................14, 16

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d. Cir. 2007) ................................5

*In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030 RMW, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) .........................................................................23

*Mellot v. Choicepoint, Inc.*, 561 F. Supp. 2d 1305 (N.D. Ga. 2007) ................................15

*Mertens v. Hewitt Assocs.,* 508 U.S. 248 (1993) .............................................................31

## TABLE OF AUTHORITIES continued

PAGE(S)

*Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) .................................................... passim

*Morrison v. Moneygram International Inc.*, 607 F. Supp. 2d 1033 (D. Minn. Mar. 25, 2009) .........................................................................................................17

*In re Mutual Funds Investment Litigation*, 403 F. Supp. 2d 434 (D. Md. 2005)..............31

*Nelson v. IPALCO Enterprises, Inc.*, 480 F. Supp. 2d 1061 (S.D. Ind. 2007), *aff'd sub nom., Nelson v. Hodowal*, 512 F.3d 347 (7th Cir. 2008) ..................................1, 22

*Nelson v. Hodowal*, 512 F.3d 347 (7th Cir. 2008) .............................................................1

*Newton v. Van Otterloo*, 756 F. Supp. 1121 (N.D. Ind. 1991) .........................................29

*Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262 (N.D. Ga. 2006)..................................15

*Pegram v. Herdrich*, 530 U.S. 211 (2000).........................................................................31

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008).........................................................17

*In re RadioShack Corp. ERISA Litigation*, 547 F. Supp. 2d 606 (N.D. Tex. 2008)....10, 19

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)................................................................5

*Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310 (N.D. Ga. 2006) .......................15, 19

*In re Sprint ERISA Lit.,* 388 F. Supp. 2d 1207 (D. Kan. 2004) ........................................21

*Summers v. State St. Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006) ...................1, 25, 27

*In re Syncor ERISA Litigation*, 516 F.3d 1095 (9th Cir. 2008) ........................................15

*Tatum v. R.J. Reynolds Tobacco Co.*, Case No. 1:02CV00373, 2007 WL 1612580 (M.D.N.C. May 31, 2007) ..........................................................................................32

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*, 546 F.3d 196 (2d Cir. 2008)..................................................................................................24

*Tool v. National Employee Benefit Services, Inc.*, 957 F. Supp. 1114 (N.D. Cal. 1996) .........................................................................................................................31

*Urban v. Comcast Corp.*, No. 08-773, 2008 WL 4739519 (E.D. Pa. Oct. 28, 2008) .........................................................................................................................13

**TABLE OF AUTHORITIES continued**

PAGE(S)

*In re Williams Cos. ERISA Litigation*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003) ...1, 29, 32

*Ward v. Avaya*, 299 Fed. Appx. 196, 200-201 (3d Cir. 2008)..........................................22

*Wright v. Medtronic, Inc.*, No. 09-cv-0443 (PJS/AJB), 2010 WL 1027808 (D. Minn. Mar. 17, 2010 ..................................................................................................17

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) .................... passim

**FEDERAL STATUTES and REGULATIONS**

ERISA §502(a)(2)..........................................................................................................31

ERISA §404(a)(2), 29 U.S.C. §1104(a)(2) ........................................................14, 15, 16

ERISA §407(d)(3), 29 U.S.C. §1107(d)(3)(A) ...........................................................5, 14

17 C.F.R. §243.100.......................................................................................................24

29 C.F.R. §2509.75-8....................................................................................................29

29 U.S.C. §1002(21) ...............................................................................................11, 31

29 U.S.C. §1002(9) .......................................................................................................32

29 U.S.C. §1104(a)(1)(D) .............................................................................................32

29 U.S.C. §1108(c)(3)...................................................................................................28

29 U.S.C. §1109............................................................................................................31

29 U.S.C. §1109(a) .......................................................................................................32

29 U.S.C. §1144(d) .................................................................................................23, 26

29 U.S.C. §1001 *et seq*...................................................................................................1

vii

# TABLE OF AUTHORITIES continued

PAGE(S)

## MISCELLANEOUS

Available at http://www.imf.org/external/pubs/ft/gfsr/2007/01/pdf/text.pdf, last visited
Aug. 13, 2010…………………………………………………………………………....9

Alan Greenspan Testimony before the FCIC, (Apr. 7, 2010)…………..……………...10

John Geanakoplos, *Solving the Present Crisis and Managing the Leverage Cycle*,
(Dec. 2009) ....................................................................................................................1

Speech to the Federal Reserve Bank of Chicago's 43rd Annual Conference on Bank
Structure and Competition, Chicago, Illinois (May 17, 2007), available at
http://www.federalreserve.gov/newsevents/speech/bernanke20070517a.htm, last
visited Aug. 13, 2010.………………………………………………………………….9

## I.   INTRODUCTION

This case is brought under the Employee Retirement Income Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001 *et seq.*, and takes its place among the hundreds of other cases that seek to convert fraud on the market securities claims into ERISA claims, despite the fact that the plaintiffs are (derivatively) part of the putative class in a companion securities action.  Federal courts have rightly taken a dim view of these claims, dismissing many on Rule 12 motions[1] or motions for summary judgment.[2]  Those few cases that have gone to trial have all resulted in judgments for the defendants.[3]  Defendants are not aware of a single final adjudication in favor of a plaintiff on the merits in an ERISA "stock drop" case.

Plaintiffs' Complaint alleging class claims does not warrant a departure from this historical pattern.  The Complaint targets Ambac Financial Group, Inc. ("Ambac" or the "Company"), certain of the Company's current and former employees, and the Plan Administrative Committee of the Ambac Financial Group, Inc. Savings Incentive Plan (the "Plan"), which all are alleged to have been responsible for the Plan's investment in publicly traded Ambac common stock ("Ambac Stock").  Like most "stock drop" lawsuits, the Complaint borrows substantially from a parallel securities fraud action pending in this Court, *In re Ambac Financial Group, Inc. Secs. Litig.*, 08-Civ-411 (NRB) (the "Securities Action").  The Securities

---

[1]   *See, e.g.,* ; *Edgar v. Avaya*, 503 F.3d 340 (3d Cir. 2007); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004); *In re Avon Prods., Inc. ERISA Litig.*, Case No. 05-Civ.-6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009) ("*Avon*") (magistrate recommendation), *aff'd by district court*, 2009 WL 884687 (S.D.N.Y. Mar. 30, 2009*); Herrera v. Wyeth,* Case No. 08-Civ.-4688, 2010 WL 1028163 (S.D.N.Y. Mar. 17, 2010)*; Gearren v. McGraw-Hill Co's, Inc.*, 690 F. Supp. 2d 254 (S.D.N.Y. 2010), *appeal docketed*, No. 10-792 (2d Cir. Mar. 4, 2010*); In re Lehman Bros. Secs. and ERISA Litig.*, Case No. 09-MD-2017, 2010 WL 354937 (S.D.N.Y. Feb. 2, 2010)*, appeal docketed*, No. 10-712 (2d Cir. Mar. 2, 2010); *In re Citigroup ERISA Litig.,* Case No. 07-Civ.-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009), *appeal docketed*, No. 09-3804-cv (2d Cir. Sept. 9, 2009).

[2]   *See, e.g.*, *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008); *Summers v. State St. Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006).

[3]   *See Brieger v. Tellabs*, 629 F. Supp. 2d 848 (N.D. Ill. 2009); *Nelson v. IPALCO Enterprises, Inc.*, 480 F. Supp. 2d 1061 (S.D. Ind. 2007), *aff'd sub nom., Nelson v. Hodowal*, 512 F.3d 347 (7th Cir. 2008); *DiFelice v. US Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd* 497 F.3d 410 (4th Cir. 2007).

Action alleges that purchasers of the Ambac Stock between October 25, 2006 and April 22, 2008 bought at "artificially inflated" prices due to fraudulent statements made by the Company and various of its officers.

Plaintiffs' Complaint alleges in shotgun fashion that these Defendants knew or should have known – as the Securities Action defendants allegedly knew and failed to disclose – of Ambac's lowered underwriting standards and their possible repercussions.  The Complaint alleges that Defendants breached their fiduciary duties under ERISA from October 25, 2006 until April 23, 2009 (a full year after the close of the Securities Action class period) by not disclosing to Plan participants information on Ambac's financial performance, and by permitting Plan participants to retain and continue to invest in "artificially inflated" Ambac Stock.  While these allegations (which Ambac disputes), if proven, may have relevance in the Securities Action, as a matter of law they fail to state claims under ERISA.

The Complaint alleges that on or before October 25, 2006, Plan fiduciaries should have sold Ambac Stock and removed it as a Plan investment option because it was "artificially inflated."  The Complaint tacitly acknowledges the global financial crisis that led to Ambac's financial problems, but refuses to acknowledge that virtually no one foresaw the depth and extent of the credit crisis that would ravage the financial markets.  Instead the Complaint seeks to hold Plan fiduciaries liable for failing to foresee the fall and sell out in advance, something few if any investors accomplished.  As one Yale University Professor of Economics put it, "it was nearly impossible to foresee the devastating consequences of the multiple feedbacks between securities and houses embodied in the double leverage cycle."  John Geanakoplos, *Solving the Present Crisis and Managing the Leverage Cycle*, at 24 (Dec. 2009).[4]

---

[4]    Available at http://www.fcic.gov/hearings/pdfs/2010-0226-Geanakoplos.pdf, last visited on August 13, 2010.

Plaintiff's attack on Defendants for not capitalizing, on his behalf, on the alleged "artificial inflation" by selling the Ambac Stock before it was revealed runs directly counter to the Plan's mandate that the Ambac Stock Fund be included in the Plan, and the Congressionally-sanctioned goal of permitting employees the opportunity to obtain an ownership interest in the companies for which they work.  Ambac Stock was a mandatory Plan investment option.  The Plan fiduciaries lacked discretion to remove it, and their failure to do so was not fiduciary conduct for which they may be held liable under ERISA.  In addition, the claim that Defendants should have sold all Ambac Stock is simply a claim that the Defendants had a duty to diversify the Ambac Stock Fund.  But the Plan is an "eligible individual account plan" and its investment in Ambac Stock is exempt by the literal terms of the statute from ERISA's diversification requirement, requiring dismissal of Plaintiff's claim.

More fundamentally, Plaintiffs' claim is simply that the fiduciaries had a duty to capitalize on the alleged fraud on the market by selling the Plan's stock before the fraud was "revealed."  This claim has been considered and rejected by several courts, including this one, that have held that fiduciaries have no duty to engage in insider trading on behalf of Plan participants and there is nothing unique about "artificial inflation" that triggers an ERISA fiduciary's duty to sell employer securities.

Even if Defendants could be deemed to have fiduciary discretion to remove the Ambac Stock as a Plan option and could do so without violating the securities laws, the Complaint does not come close to pleading facts sufficient to overcome the abuse of discretion standard that applies to the decisions of the Plan fiduciaries concerning the Ambac Stock.  That legal pleading and proof standard requires a plaintiff to allege that, as of October 25, 2006 Ambac faced impending collapse.  He has not and cannot do so.  During the alleged class period, Ambac was a

viable, ongoing concern that suffered from the credit crisis in the same way as many other financial institutions.  For all of these reasons, Plaintiff's Count I claim for failure to prudently and loyally manage the Plan's assets (Count I) must be dismissed.

Count II (Conflict of Interest), and Count III (Failure to Monitor) should be dismissed as well.  First, each is derivative of and dependent upon the underlying claims in Count I; thus, once the claims in Count I are dismissed, these claims necessarily fail.  Second, each of these claims is supported by only perfunctory and conclusory allegations that are contradicted by the Plan and fail to satisfy the pleading requirements set forth by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Plaintiff's stab at pleading the Defendants' fiduciary status also misses the mark since the Plan documents make it clear that most of these Defendants had no responsibility for determining which investment funds would be offered under the Plan, much less any discretionary control over the Plan's Ambac Stock.  Plaintiffs cannot overcome this hurdle by simply reciting that Defendants were ERISA fiduciaries.

In sum, the Complaint seeks to paste an ERISA veneer over a common securities fraud claim.  Because these claims are not viable as a matter of law, the Complaint must be dismissed.

## II.    BACKGROUND

### A.    The Parties

Plaintiff Veera ("Plaintiff") is a former employee of Ambac Financial Group, Inc. who was a participant in the Ambac Financial Group, Inc. Savings Incentive Plan during the alleged class period and invested all of his contributions in the Ambac Stock Fund offered under the Plan despite being cautioned (as described below) about the risks of not diversifying his investments. (Compl. ¶¶24-25).

Ambac Financial Group, Inc. is a holding company with numerous subsidiaries that provide financial guarantee products and other financial services to clients in both the public and private sectors. Its common stock is traded on the New York Stock Exchange. Ambac sells insurance against default by issuers of public and structured finance obligations through its principal operating subsidiary, Ambac Assurance Corporation ("Ambac Assurance").

The other named Defendants include the Plan Administrative Committee, its members, and certain present and former Ambac employees, Sean T. Leonard, Gregg L. Bienstock, Diana Adams, Robert Eisman, Timothy Stevens, and Anne Gill Kelly. Of the individually-named Defendants, only Leonard and Stevens served on the Plan's Investment Committee. (Declaration of Anne Gill Kelly ("Kelly Decl."), ¶4).[5]

### B.      Savings Incentive Plan

Ambac is the Plan sponsor of the Plan, which is an "eligible individual account plan" under ERISA. 29 U.S.C. §1107(d)(3)(A). Eligible Ambac employees could make voluntary contributions, which were deducted from their paychecks. (Plan, §4.2, Ex. A).[6] In addition, the Plan provided for a direct employer contribution of 6% of base salary compensation, a discretionary contribution to be awarded in the Company's discretion, and, an employer matching contribution. (Plan, §§4.6(a)-(c), 4.7). At the start of the alleged class period, the employer matching contribution was 50% of the employee's contribution, up to 6% of the employee's annual base salary. (Plan, §4.7). Effective January 1, 2007, the employer matching

---

[5]      The Court may consider plan documents and public filings because these documents are integral to or expressly relied upon in the Complaint. *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d. Cir. 2007); *Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir. 2000); *Edgar*, 503 F.3d at 350 (considering SPD); *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009) (court could properly consider plan, SPDs, SPD supplements, prospectuses and other plan documents).

[6]      All Exhibits referenced herein are attached to the Declaration of Jamie M. Kohen, filed herewith.

contribution was increased to 100% of the employee's contribution, up to 6% of the employee's annual base salary.  (Plan Amendment One, Ex. A).

### 1.      The Plan's Investment Options

The Plan offered a variety of investment options to Plan participants, including stock and bond mutual funds.  The 2002 Summary Plan Description distributed to Plan participants listed 18 investment fund options; the updated 2008 Summary Plan Description included 33 investment options.  (Compl. ¶38; 2002 Summary Plan Description, Ex. B, Q-27, p. 14-15; 2008 Summary Plan Description, Ex. C, Q-24, p. 12-13).  Plan participants directed the investment of their Plan accounts among the various investment funds offered, and were free to change their investments at any time.  (Plan, §§5.1(a), (b)).

At all times during the alleged class period, the Plan mandated Ambac Stock as one of those investment fund offerings:

> 'Investment Fund' means each segregated or commingled fund or funds selected by the Plan Investment Committee from time to time as an alternative under the Plan for the investment of Plan assets; ***provided, however,*** **that the Ambac Financial Group, Inc. Stock Fund shall be an Investment Fund.**

(Plan, p. 6) (emphasis added).  Plan participants were notified through the Plan's Summary Plan Description of the Plan's company stock requirement:

> **The Plan requires that the Ambac Financial Group, Inc. Stock Fund be offered as an Investment Fund.**

(2008 SPD, Q24, p. 14. (emphasis added).

Participants were alerted to the importance of diversifying their investments:

> **If you invest more than 20% of your retirement savings in any one company or industry, your savings may not be properly diversified.** Although diversification is not a guarantee against loss, it is an effective strategy to manage investment risk.

(2008 SPD, at Q26, p. 15) (emphasis added).  The 2002 SPD likewise notified participants of the

risk of investing in a single stock fund:

> **The Ambac Financial Group, Inc. Stock Fund Investment Option**
>
> . . . The Stock Fund is not a diversified investment and is not a mutual
> fund.  The Stock Fund is subject to the normal factors affecting the general
> level of stock prices and the specific factors affecting Ambac Financial
> Group, Inc.  Its share price and return will fluctuate.

(2002 SPD, p. 4-5).

### 2.     Plan Administration

Under the Plan, the "Plan Administrative Committee" had responsibility "for the

interpretation and construction of the Plan and final authority with respect to operation and

administration of the Plan."  (Plan, §11.5).  The "Plan Investment Committee" is "the committee

that administers the Plan with respect to the selection of Investment Funds . . ."  (Plan,

Definition, p. 7).  The SPD so informed Plan participants:

> The administration of the Plan with respect to the formulation of
> investment policy, the selection of Investment Funds and the monitoring
> of the performance of the selected Investment Funds are the
> responsibilities of the Plan Investment Committee.

(2002 SPD, p. 4).  Thus, the Plan specifies that the "named fiduciary" for managing Plan assets

is the Plan Investment Committee.  (Plan §11.11).

### C.     Plaintiff's Allegations

Borrowing directly from the Securities Action, the Complaint alleges that:

> (a) Ambac was exposed to billions of dollars of losses on high-risk
> transactions; (b) Ambac had significantly loosened and lowered its
> underwriting standards which was a fundamental change in its business;
> (c) Ambac had sacrificed its financial security and stability by pursuing
> risky revenue growth through high-risk transactions that were failing or
> were in serious jeopardy of failing; (d) Ambac had improperly bolstered
> its reported financial results by overstating the value of its business and
> failing to properly mark-to-market Ambac's portfolio of high-risk
> securities, even as the market collapsed for the collateral underlying those

securities; (e) The Company had far greater exposure to anticipated losses than it had disclosed;

(Compl. ¶7).  While the purported class period is alleged to be October 25, 2006 to April 23, 2009, the Complaint alleges that from November 2007 until April 23, 2008, the Company made a series of public statements revealing Ambac's deteriorating financial condition that resulted in a decline in the stock price.  (Compl. ¶¶116-138).  The Complaint includes no allegations of "artificial inflation" in the Ambac Stock after April 23, 2008.

Ultimately, Plaintiff complains that the Ambac Stock price fell from a high during the alleged class period of $96.08 to its current trading price of below one dollar.  (Compl. ¶¶7, 120, 134).  But the Complaint includes no factual allegations suggesting that as of October 25, 2006, the Company's continued viability was at stake.

The Complaint alleges that Defendants breached their fiduciaries duties under ERISA during the class period by:  "(1) continuing to offer Ambac Stock as an investment option for the Plan when it was imprudent to do so; (2) failing to provide complete and accurate information to Plan Participants regarding the Company's financial condition and the risk of investing retirement assets in Ambac Stock and (3) maintaining the Plan's pre-existing heavy investment in Ambac Stock when it was no longer a prudent Plan investment."  (Compl. ¶6).  It also alleges that Defendants breached the "duty to avoid conflicts of interest," and failed to monitor the other Plan fiduciaries.  (Compl. ¶¶181-213).

### D.    Economic Context of Plaintiff's Allegations

Ultimately Plaintiff's allegations are rooted in the collapse in markets for "Residential Mortgage-Backed Securities ("RMBS") and other Collateralized Debt Obligations ("CDOs")[7] in

---

[7]    An RMBS is a debt security that receives cash inflows directly from underlying pools of residential mortgages. Banks form RMBS by first purchasing mortgages from lenders or originating them directly, then compiling

2007 and 2008 and the unprecedented defaults in these securities, some of which were guaranteed by Ambac.  As a result, Ambac suffered financial losses that far surpassed the expectations of investors, analysts, and Ambac's management.  As Ambac's losses on its insured securities mounted, Ambac's stock price fell.  (Compl. ¶139).

Virtually no one in government, academia, or the private sector foresaw the market collapse and ensuing credit crisis.  For example, in May 2007 even after the initial mortgage market slowdown, Federal Reserve Chairman Ben S. Bernanke assured the public that:  "The vast majority of mortgages, including even subprime mortgages, continue to perform well."[8]  In April 2007, the International Monetary Fund found that "[t]he deterioration in the credit quality of subprime mortgages has . . . been contained to certain portions of the subprime market [] and is not likely to pose a serious systemic threat."  *Global Financial Stability Report*, p. 6-7.[9]  The report reached this conclusion based on "stress" tests conducted by investment banks "show[ing] that, even under scenarios of nationwide house price declines that are historically unprecedented, *most investors with exposure to subprime mortgages through securitized structures will not face losses*."  *Id.* at 7 (emphasis added).  In hindsight, these predictions turned out to be grossly inaccurate.

As of October 25, 2006, the start of the alleged class period, Ambac was a viable, stable, going concern.  The Company's Form 10-K for the fiscal year 2006 reflected retained equity of over six billion dollars, as its assets totaled $20,267,813,000 while its liabilities were $14,083,624,000.  (2006 10-K, p. 76, Ex. D).  None of this information is alleged to be

---

those mortgages into RMBS.  A CDO a derivative security that receives cash inflows from asset-backed securities, including RMBS, or from other CDOs that are themselves funded by asset-backed securities.

[8]   Speech to the Federal Reserve Bank of Chicago's 43rd Annual Conference on Bank Structure and Competition, Chicago, Illinois (May 17, 2007), available at http://www.federalreserve.gov/newsevents/speech/bernanke20070517a.htm, last visited Aug. 13, 2010.

[9]   Available at http://www.imf.org/external/pubs/ft/gfsr/2007/01/pdf/text.pdf, last visited Aug. 13, 2010.

"artificially inflated." Ambac's stock was trading at $83.20 a share, its principal operating subsidiary Ambac Assurance's credit rating from the three key credit agencies was AAA, and its independent auditors KPMG expressed no concerns regarding its financial statements. (*Id.*; Ex. E (Document reflecting Stock Price).

Ambac Assurance's credit rating remained AAA until January 18, 2008, when Fitch downgraded its rating; Ambac Assurance retained its AAA rating from S&P and Moody's through June 2008. (Compl. ¶126). The rating agencies, like the rest of the financial markets, did not foresee the looming economic crisis. As Alan Greenspan, former Chairman of the Federal Reserve, reported to the FCIC: "[D]espite their decades of experience, *the rating agencies proved no more adept at anticipating the onset of crisis than the investment community at large*." Alan Greenspan Testimony before the FCIC, p. 8 (Apr. 7, 2010) (emphasis added).

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555. Rather, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the mere possibility that defendant acted unlawfully is not enough. *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that "are merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal citations and quotations omitted) (dismissing claims because conclusory allegations were insufficient to meet the pleading requirements of Rule 8); *In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606,

609 (N.D. Tex. 2008) (in ERISA stock drop case, noting that a "plaintiff must . . . plead specific

facts, not mere conclusory allegations, to avoid dismissal").

## IV.   ARGUMENT

### A.   The Plan Mandates The Offering Of Ambac Stock, Therefore Neither The Plan Nor ERISA Gives The Fiduciaries Discretion To Eliminate The Stock Fund And Count I Fails To State A Claim.

Plaintiff alleges in Count I that Defendants breached their ERISA fiduciary duties during

the alleged class period by retaining the Plan's investment in Ambac Stock and/or continuing to

offer the Ambac Stock Fund as an investment alternative under the Plan.  (*See* Compl. ¶7).

However, because the Plan's written terms required that Ambac Stock be offered as an

investment option, the fiduciaries had neither the authority nor the discretion to eliminate the

Stock Fund.

"The 'threshold question' in 'every case charging breach of ERISA fiduciary duty' is

whether the defendant 'was acting as a fiduciary (that is, was performing a fiduciary function)

when taking the action subject to complaint.'"  *In re Citigroup ERISA Litig.,* No. 07 Civ 9790,

2009 WL 2762708, at *12 (S.D.N.Y. Aug. 31, 2009), appeal docketed, No. 09-3804-cv (2d Cir.

Sept. 9, 2009) ("*Citigroup*") (citation omitted).  Simply stated, ERISA's fiduciary provisions do

not apply to a plan sponsor's determination of the design (and terms) of a benefit plan in the first

instance, as this Court held in *Citigroup*.[10]  Because the Plan specifically requires that Company

stock be offered as an investment option for Plan participants, any decision to alter or maintain

that Plan requirement would impact the Plan's design and thus not be subject to ERISA's

---

[10]   Section 3(21)(A) of ERISA provides that a person is a fiduciary with respect to a plan "to the extent" the person: (i) exercises any discretionary authority or discretionary control respecting management of the plan or exercises any authority or control respecting management or disposition of its assets; (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of the plan, or has any authority or responsibility to do so; or (iii) has discretionary authority or discretionary responsibility in the administration of the plan.  29 U.S.C. §1002(21)(A).

fiduciary requirements.  *See, e.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999)

(activities related to the formation and design rather than management of the plans are settlor

functions).  *Accord Beck v. PACE Int'l Union*, 551 U.S. 96, 102, 110 (2007); *Lockheed Corp. v.*

*Spink*, 517 U.S. 882, 890 (1996); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78

(1995).

      The facts of *Citigroup* are nearly identical to those presented here.  Plaintiffs in *Citigroup*

alleged that the defendants "knew, or should have known, that Citigroup stock was an imprudent

investment during the class period" because they "knew of the heavy losses which the Company

would inevitably sustain from [exposure to investments in] subprime loans."  *Citigroup*, at *5

(quotations removed).  But the Plans at issue in *Citigroup* stated that "the Citigroup Common

Stock Fund <u>shall be</u> permanently maintained as an Investment Fund under the Plan."  *Citigroup*,

at *3 (underline added).  Judge Stein found that this language deprived the defendants of any

discretion to remove the stock and immunized them from suit for failing to do so.  *Citigroup*, at

*15

      Here, the Plan gives the Investment Committee authority to select funds for the

investment of Plan assets, "*provided, however*, that the Ambac Financial Group, Inc. Stock Fund

<u>shall be</u> an Investment Fund." (Plan, Definitions, p. 6) (italics in original) (underline added).

Thus, as in *Citigroup*, the Plan gives the fiduciaries no discretion to eliminate the Ambac Stock

Fund as an investment option, immunizing them from judicial review for failure to eliminate it.

(Plan, Definitions, p. 6.)

      The Fifth Circuit reached the same conclusion in *Kirschbaum*, holding that the defendant

fiduciaries did not have the discretionary authority under the plan to remove the stock because it

was "hard-wired" into the REI plan as an investment option and "[a]ltering . . . [this] provision[]

would have required REI, acting in its capacity as a settlor, to amend the Plan."  526 F.3d at 250.

Following *Hughes Aircraft* and *Lockheed Corp.,* the Fifth Circuit concluded that decisions of a

plan sponsor to amend the plan are "[e]xcluded from fiduciary responsibilities."  *Id.* at 251.[11]

*See also Edgar v. Avaya, Inc.*, 503 F.3d 340, 346 (3d Cir. 2007).

      Several other district courts have recently recognized that when a plan document requires

an employer stock fund, fiduciaries have no discretionary control over the investment and

therefore are immune from claims for fiduciary breach.  *E.g., In re Wachovia Corp. ERISA Litig.*,

Case No. 3:09-cv-262 (W.D.N.C. Aug. 6, 2010) (slip op.) (Ex. F) (following *Citigroup* and

holding that language providing that the plan "shall" include an employer stock fund foreclosed

ERISA claims for failure to sell); *In re ING Group, N.V. ERISA Litig.*, No. 09-400, 2010 U.S.

Dist. LEXIS 44238, at *20 (N.D. Ga. Mar. 31, 2010) ("As the ING option was mandated by the

Plan, defendants cannot be liable for breach of fiduciary duty on the basis of their decision to

offer ING stock."); *Urban v. Comcast Corp.*, No. 08-773, 2008 WL 4739519, at *12 (E.D. Pa.

Oct. 28, 2008) ("[W]here a plan's settlor mandates investment in employer securities, the plan

fiduciaries are 'immune from judicial inquiry' related to such investments, essentially because

they are implementing the intent of the settlor.") (citation omitted).

      The message of these cases is clear.  Defendants cannot be held liable under ERISA for

failing to sell or cease offering the Ambac Stock because they had no discretion under the Plan to

do so.  Thus, Count I should be dismissed in its entirety with prejudice.

---

[11]    The Fifth Circuit went on to find that documents extrinsic to the plan created ambiguity as to whether the fiduciaries actually had discretion over the employer securities.  *Kirschbaum*, 526 F.3d at 256.  No such ambiguity is alleged in this case.

**B.    The Plan Fiduciaries Were Not Required To Diversify Out Of Ambac Stock Since The Plan Is Exempt From ERISA's Duty Of Diversification For It's Investment In Employer Securities.**

Apart from the Plan document, ERISA's statutory language provides an independent basis for the dismissal of Count I.  ERISA §404(a)(1)(C) imposes upon fiduciaries of employee benefit plans the duty to diversify the investments to avoid the risk of large losses.  However, a statutory exception designed to promote investment in employer securities exempts the Plan, as an "eligible individual account plan" ("EIAP"), from ERISA's diversification requirement.[12]

While the Second Circuit has not had the opportunity to squarely address the issue, the Eighth Circuit, as well as many district courts, have explicitly recognized that a breach of fiduciary duty claim cannot be based on an EIAP's failure to diversify:

> Congress intended to permit an ESOP to be used as a technique of corporate finance as well as a retirement benefit plan for employees. . . . ERISA duties are not breached by the mere fact that an ESOP fails to diversify, or that it engages in or contemplates employer-motivated transactions that would be prohibited self-dealing if done by a more conventional ERISA plan.

*Brown v. American Life Holdings, Inc.*, 190 F.3d 856, 860 (8th Cir. 1999) (citing *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992) (recognizing the special, congressionally-approved status of an ESOP, which "places employee retirement assets at much greater risk than does the typical diversified ERISA plan.")); *see, e.g., Citigroup*, 2009 WL 2762708, at *7 (ERISA's diversification requirement does not apply to ESOPs); *In re Bausch & Lomb, Inc. ERISA Litig.*, No. 06-CV-6297, 2008 WL 5234281, at *54 (W.D.N.Y. Dec. 12, 2008) (under §404(a)(2) "prudence by diversification requirements are not violated by 'acquisition or holding of qualifying employer securities'").

---

[12]    29 U.S.C. §1104(a)(2) states in relevant part, "in the case of an eligible individual account plan (as defined in §407(d)(3)), the diversification requirement . . . and the prudence requirement (only to the extent it requires diversification) . . . *is not violated by the acquisition and holding of qualifying employer real property or qualifying employer securities*."  (emphasis added).

14

Numerous courts have dismissed claims that fiduciaries have a duty to sell employer securities and cease further purchases, holding they are simply claims that fiduciaries should have diversified the employer securities. *Kirschbaum*, 526 F.3d at 249 (stating that plaintiffs' imprudence claims were actually claims that "clearly states a failure to diversify" and noting that – like here – plaintiff faulted defendants for "failing to diversify the assets of the Plan."); *Mellot v. Choicepoint, Inc*., 561 F. Supp. 2d 1305, 1311-12 (N.D. Ga. 2007) (dismissing claim challenging investment in employer stock: "if Defendants ceased investing Plan assets in the Stock Fund and ChoicePoint stock, they would presumably invest those assets elsewhere, essentially diversifying the assets, something they were not required to do under ERISA."), *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1327 (N.D. Ga. 2006) (holding that imprudence claim "just amounts to another form of diversification argument" from which fiduciaries are exempt under §404(a)(2)); *Pedraza v. Coca-Cola Co.,* 456 F. Supp. 2d 1262, 1274-75 (N.D. Ga. 2006) (same); *In re Beazer Homes USA, Inc. ERISA Litig.,* No. 07-0952, 2010 U.S. Dist. LEXIS 33476, at *19-20 (N.D. Ga. Apr. 2, 2010) (same).

The Ninth Circuit has likewise observed that subjecting "EIAPs to an albeit tempered duty to diversify arguably threatens to eviscerate congressional intent and the guiding rationale behind EIAPs themselves." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004) (*citing Fink v. Nat'l Sav. and Trust Co.*, 772 F.2d 951, 956 (D.C. Cir. 1985)).[13]  While the Ninth Circuit found that it need not decide whether §404(a)(2) bars any claim for failure to sell employer securities, the court noted that "unlike traditional pension plans governed by

---

[13]   In *Wright*, the Ninth Circuit specifically declined to adopt the holding of the Third Circuit in *Moench*, discussed below in Section IV.C.1., that the statutory provisions exempting an EIAP from diversification may give rise to a rebuttable presumption of prudence.  In *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1102 (9th Cir. 2008), the Ninth Circuit again declined to adopt *Moench,* but did not articulate the proper standard of review, instead simply concluding that where there were violations of the Foreign Corrupt Practices Act, that was sufficient to withstand summary dismissal.

ERISA, EIAPs [ ] are not intended to guarantee retirement benefits and indeed by their very nature, 'place [] employee retirement assets at much greater risk than does the typical diversified ERISA plan.'"  *Wright,* 360 F.3d 1090, 1097, *citing Martin v. Feilen,* 965 F. 2d 660, 684 (8th Cir. 1992).

Defendants respectfully submit that this Court should follow the statutory mandate of ERISA §404(a)(2), as interpreted by these well-reasoned decisions, and dismiss Plaintiff's claim that Defendants had a duty under ERISA to sell (diversify) the Ambac Stock held by the Plan.

**C.    Even If The Fiduciaries Could Be Deemed To Have Discretion Under The Plan And ERISA To Remove The Stock Fund From The Plan, Count I Fails To Plead Facts Establishing An Abuse Of Discretion By Any Defendant.**

Though the Court need not reach the issue, Plaintiffs' claim fails for the additional reason that the Complaint can survive only if it pleads facts establishing that Defendants with responsibility for investments under the Plan abused their discretion by failing to sell or cease offering the Ambac Stock.  Application of the abuse of discretion standard, also called the "presumption of prudence" by many courts, compels dismissal of Count I.[14]

**1.    The Abuse Of Discretion Standard Of Review Has Been Widely Adopted And Applied By The Courts To Dismiss Inadequately Pled Claims That Fiduciaries Breached Their ERISA Duty Of Prudence By Failing To Sell Employer Securities.**

Given the special purposes of EIAPs discussed above, and because such plans are not designed to guarantee retirement benefits, even those fiduciaries with discretion to remove employer stock can be held liable for failing to do so only under dramatically limited circumstances.  This legal standard, often called the "prudence presumption" has its origins in *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), where the Third Circuit held that a fiduciary of an ESOP (a specific type of EIAP) is entitled to "a presumption that it acted consistently with

---

[14]    In *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995), the Sixth Circuit adopted *Moench* and interpreted it to require an abuse of discretion.

ERISA" when it decides to invest plan assets in the sponsoring company's stock and will not be
held liable absent an abuse of discretion. *Moench*, 62 F.3d at 571.[15]  The Third, Fifth, and Sixth
Circuits have embraced the presumption. *See id.; Kuper*, 66 F.3d at 1459 (adopting abuse of
discretion standard); *Kirschbaum*, 526 F.3d at 256 (the presumption is a "substantial shield" to
allegations of imprudence and "may only be rebutted if unforeseen circumstances would defeat
or substantially impair the accomplishment of the trust's purposes.").[16]

     In this circuit, courts have regularly applied the abuse-of-discretion standard at the
motion-to-dismiss stage, dismissing inadequate claims of fiduciary breach. *Citigroup*, 2009 WL
2762708, at *16.  In general, a claim is inadequate if it fails to allege facts indicating that the
employer faced imminent collapse at the time it became imprudent to hold employer securities.[17]

---

[15]    Recent decisions have recognized that the term "presumption," is actually a misnomer since it refers to the
*legal* abuse of discretion standard of review applied by the courts to a fiduciary's conduct:

> [I]t is somewhat misleading to say, in the context of a Rule 12(b)(6) motion, that the
> Court is applying a "presumption" or that a Plaintiff must plead sufficient facts to
> "overcome" it.  A Plaintiff who has failed to plead facts that, if proven, would establish
> that an [ESOP] should not have invested in any employer stock has failed to state a claim,
> not failed to overcome a presumption.

*Medtronic*, 2010 WL 1027808 at *6.  The presumption of prudence "is not a mere evidentiary standard, but
instead a substantive rule of law that can be applied at the motion-to-dismiss stage."  *In re Ford Motor Co.
ERISA Litig.*, 590 F. Supp. 2d 883, 893 n.1 (E.D. Mich. 2008).[15]  *See also Avon*, 2009 WL 848083, at *10.  *See
also Crocker v. KV Pharmaceutical Co. et al.*, 2010 WL 1257671 at *19 (E.D. Mo. Mar. 24, 2010), ("[T]he
*Moench* presumption is not an evidentiary standard, and the presumption may be applied at the motion to
dismiss stage."); *MoneyGram Int'l, Inc.*, 607 F. Supp. 2d at 1051 (in applying *Moench* at pleading stage,
finding that "[t]he presumption of prudence is a legal presumption that limits the circumstances under which a
fiduciary of an EIAP can be found liable.  In other words, the presumption defines the elements of a plaintiff's
substantive cause of action.").

[16]    *See also Pugh v. Tribune Co.*, 521 F.3d 686, 701 (7th Cir. 2008) (affirming dismissal of ERISA claims as to
employer stock and citing *Moench* in determining that allegations were insufficient to "show that the ERISA
fiduciary could not have reasonably believed that the plan's drafters would have intended under the
circumstances that he continue to comply with the ESOP's direction that he invest exclusively in employer
securities.").

[17]    Courts have also described the abuse of discretion standard as requiring the Court to treat the plan as if it held
*one share* of employer stock and to determine whether the complaint pleads facts sufficient to trigger a duty to
sell that *single* share.  *See, e.g., Morrison v. Moneygram Int'l. Inc.*, 607 F. Supp. 2d 1033, 1053 (D. Minn.
Mar. 25, 2009) ("an abuse of discretion begins . . . at the point at which company stock becomes so risky that
no prudent fiduciary, reasonably aware of the needs and risk tolerance of the Plan's beneficiaries, would invest
*any* Plan assets in it, regardless of what other stocks were also in that Plan's portfolio"); *Medtronic*, 2010 WL
1027808, at *6 (same).  Indeed, a fiduciary with responsibility for a plan holding millions of dollars in assets

*See, e.g. Herrera v. Wyeth*, No. 08-CV-4688, at 7 (S.D.N.Y. Mar. 16, 2010) (Sullivan, J.) (slip

op.) (Ex. G); *Gearren*, 690 F. Supp. 2d at 271 (dismissing "stock-drop" claim when plaintiffs

failed to plead "catastrophic decline necessary to rebut the presumption [of prudence]"); *In re*

*Lehman Bros. Securities and ERISA Litigation,* 683 F. Supp. 2d 294 (S.D.N.Y. 2010)

(dismissing for failure to plead "the fiduciary's knowledge at a pertinent time of 'an imminent

corporate collapse or other "dire situation sufficient to compel an ESOP sell off'.") (internal

quotations and citations omitted); *Fisher v. JPMorgan Chase & Co.*, No. 03 Civ. 3252 (SHS),

2010 WL 1257345, *8 (S.D.N.Y. Mar. 31, 2010) (dismissing for failure to plead "'the type of

dire situation' that would have caused the plan fiduciary defendants to believe continuing to offer

the Stock Fund was no longer 'keeping with the settlor's expectations of how a prudent trustee

would operate.'") (internal citations omitted); *Avon*, 2009 WL 848083, at *10 (dismissing for

failure to "present a basis for inferring that the company was facing such a ruinous financial

situation that maintaining the Plan's interest in its common stock was self-evidentially

financially destructive to the Plan."); *In re Bausch & Lomb, Inc. ERISA Litig.*, 2008 WL

5234281, at *54 (dismissing for failure to allege the company "was in the type of jeopardy that

would have caused the Plan drafters to discontinue participant discretion to invest in and out of

the B & L Stock Fund").

 Indeed, in the wake of the sub-prime mortgage crisis, courts in this district have

dismissed claims against financial institutions in the face of the same allegations that defendants

should have seen it coming where no "impending collapse" was pled.  *E.g., Citigroup,* 2009 WL

2762708, at *18.  In *In re Lehman Bros.,* the plaintiffs alleged that Lehman Brothers held large

amounts of risky real estate loans and mortgages and had "overvalued these assets and that its

---

would only be compelled by ERISA's prudence requirement to sell a single share when the fiduciary had clear
notice that single share was about to become worthless.

financial condition therefore was weaker than disclosed," ultimately causing the bank's demise

and bankruptcy.  683 F. Supp. 2d at 297.  This court held that, to state a claim, plaintiffs must

plead "the fiduciary's knowledge at a pertinent time of 'an imminent corporate collapse or other

dire situation sufficient to compel an ESOP sell off.'"  *Id.* at *301* (citing *Avon,* 2009 WL 848083

at *11).  The court found that the plaintiffs' complaint "fails to allege facts that permit a

determination of when Lehman's financial condition reached that point. . . .  Instead, the

[complaint] alleges, in conclusory terms only, that there were 'clear warning signs' of collapse

and that defendants 'knew or should have known' about Lehman's true financial state throughout

the class period." *Id.* at 303.  Many district courts outside this circuit have followed suit,

applying the abuse of discretion standard and dismissing similar claims on Rule 12 motions.[18]

 This Court should follow these well-reasoned decisions and review the sufficiency of the

Complaint under the abuse of discretion standard.

  **2. The Complaint Fails To Allege Facts Establishing That Any
Defendant Abused His Or Her Discretion And Therefore Fails To
Overcome The "Presumption Of Prudence."**

 The Complaint alleges that on October 25, 2006, the Ambac Stock became imprudent,

requiring the fiduciaries to sell or cease offering the stock.  But while the Complaint repeatedly

trumpets the *subsequent* reduction in Ambac's share price, it makes no allegations from which

the Court could infer that Ambac faced "imminent collapse" or other dire financial

---

[18] *See* footnote 1, *supra*; *e.g., Johnson v. Radian Group, Inc.*, No. 08-2007, 2009 WL 2137241, at *16 (E.D. Pa.
July 16, 2009) (granting motion to dismiss stock drop claims as the allegations did not show "ongoing viability
as a company was implicated"); *Benitez v. Humana, Inc.*, No. 3:08cv-211-H, 2009 WL 3166651, at *7 (W.D.
Ky. Sept. 30, 2009) ("This standard of 'presumed reasonableness' and its application in the above
circumstances seem to set an appropriately high barrier for moving forward in cases of this kind"); *In re Dell,
Inc. ERISA Litig.*, 563 F. Supp. 2d 681 at 694 (W.D. Tex. 2008) (dismissing claims where "there [was] no
indication Dell's survival was ever threatened nor that Dell's stock was in danger of becoming worthless");
*Radioshack* 547 F. Supp. 2d at 615-16 (dismissing ERISA claim where dire circumstances were not alleged);
*In re Coca-Cola Enterp. Inc., ERISA Litig.*, No. 06-953, 2007 WL 1810211, at *10 (N.D. Ga. June 20, 2007)
("The drastic action Plaintiff advocates would only be appropriate in the case of a company on the brink of
collapse"); *Smith v. Delta Airlines*, 422 F. Supp. 2d 1310, 1331 (N.D. Ga. 2006) ("impending collapse").

circumstances on October 25, 2006, despite the Complaint's allegation that it became imprudent to continue to hold Ambac Stock on that date.[19]  Instead, Plaintiff essentially asks the Court to infer, with the aid of 20/20 hindsight and based solely on events occurring *after* that date, that it was imprudent to hold the Stock after October 25, 2006.  However, it has long been established that ERISA's prudence standard is measured by "the circumstances then prevailing" at the time of the allegedly imprudent act, and not "'whether [the] investment[] [ultimately] succeeded or failed.'"  *Kirschbaum*, 526 F.3d at 253 (citing *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983)); *see also Johnson,* 2009 WL 2137241, at *13 (collecting cases); *Keach v. U.S. Trust Co.*, 419 F.3d 626, 638 (7th Cir. 2005) ("ERISA's fiduciary duty of care 'requires prudence, not prescience'").

Plaintiff variously alleges that Defendants should have known that investment in Ambac Stock was imprudent because of the Company's alleged lowered underwriting standards and alleged pursuit of risky revenue growth through high-risk transactions.  (Compl. ¶7).  However, investors, who were aware of Ambac's business practices prior to October 25, 2006, were perfectly content to assume any related risks by purchasing Ambac Stock.  (*E.g.,* 2001 10-K, Ex. H).  The Complaint does not allege that these business practices were misrepresented to the investing public prior to October 25, 2006.  Thus, Plaintiff has not met his burden of pleading that any Defendant abused his/her discretion by failing to sell or cease offering Ambac Stock on October 25, 2006, the date the Complaint alleges it became an imprudent investment.  Indeed, just last week a district court dismissed prudence claims under similar circumstances, where the plaintiffs alleged that the company's "risky business practices were cause for divestiture" but the

---

[19]     *See In re Computer Sciences Corp ERISA Litig..,* 635 F. Supp. 2d 1128, 1135 (C.D. Cal. 2009) (summary judgment) (dismissing claims that stock became imprudent "no later than the first day of the class period" because plaintiffs "failed to sufficiently explain why Defendants should have known of the alleged lack of controls at this time"), *appeal docketed*, Nos. 09-56190, 09-56248 (9th Cir. July 31, 2009).

company had pursued those practices for years "with highly profitable results."  *In re Constellation Energy Group, Inc. ERISA Litig.*, Civil Action No. CCB-08-2662, at \*10 (D. Md. Aug. 13, 2010) (slip op.) (Ex. I) ("A company's decision to adopt a riskier business model is not in itself a fiduciary decision governed by ERISA, nor does that decision automatically trigger a duty to divest.").

The only allegation that even alludes to potential financial problems as of October 25, 2006 appears in paragraph 111 of the Complaint:  "as the real estate and credit markets came under pressure before and during the Class Period, Ambac was experiencing significant problems which jeopardized Ambac Assurance's AAA rating as well as its financial viability."[20] However, on October 25, 2006, Ambac Assurance had a AAA credit rating from all three rating agencies, Ambac had equity reserves of over six billion dollars and was trading at over $83.00 a share.  (2006 10-K, Ex. B).  Plaintiff's blanket proclamation that Ambac's financial viability was jeopardized – contrary to judicially-noticeable facts – is insufficient under *Twombly* and *Iqbal* for Plaintiff's Complaint to withstand dismissal.  *See Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (court must dismiss if allegations "merely parrot the statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims,"); *In re Sprint ERISA Litig.,* 388 F. Supp. 2d 1207 (D. Kan. 2004) (rejecting co-fiduciary claims on a motion to dismiss where allegations merely parroted the legal standard without citing any alleged factual support).  At base, Plaintiff's failure to plead facts suggesting the Company faced a serious risk of collapse on October 25, 2006 compels dismissal of his claim that it was imprudent to hold the Stock after that date.

---

[20] The gist of Plaintiff's Complaint is that Ambac Assurance's insuring CDOs and RMBS triggered a duty for the Plan fiduciaries to sell the Ambac Stock.  (Compl. ¶¶106-13).  However, Ambac Assurance had been insuring these vehicles for many years with full disclosure to the market, and as of October 2006, the market *bid up* the price of the stock.  (Ex. H (2001 10-K, p. 4); Ex. J (Chart of Stock Price 2002-2006)).  Thus, Plaintiff's hindsight criticism of these investments reflects the opportunistic nature of his claim.

Lacking facts to support Ambac's impending collapse, Plaintiff is left with the decline in Ambac's stock price from $96.08 at some point during the alleged class period, (Compl. ¶120), to its current trading price of below one dollar, (Compl. ¶134).  While Plaintiff relies heavily on this fact, it is insufficient to demonstrate that maintaining the Ambac Stock fund in the Plan was imprudent, as the caselaw clearly holds.  *See Kuper*, 66 F.3d at 1460 (company-wide problems and 80% drop in stock price not sufficient); *Wright*, 360 F.3d at 1096-99 (ill-advised merger and decline in stock price of nearly 75% held insufficient); *Nelson*, 480 F. Supp. 2d at 064, 1099-1103 (decline in stock price of 90%); *Ward v. Avaya*, 299 Fed. Appx. 196, 200-201 (3d Cir. 2008) (stock price declined approximately 95%); *Crowley v. Corning, Inc*., 234 F. Supp. 2d 222, 227, 230 (W.D.N.Y. 2002) (80% decline in value).

Thus, should the Court decide to address this issue, Plaintiff's prudence claim (Count I) should be dismissed because Plaintiff's allegations do not (and cannot) establish that any Defendant abused his or her discretion by failing to sell the Ambac Stock and/or remove it as an investment option on or before October 25, 2006.

### 3. The "Artificial Inflation" Claim Fails, In Any Event, Because Defendants Could Not Have Prevented The Alleged Losses Claimed By Plaintiff.

Absent facts necessary to establish an abuse of discretion, Plaintiff is left with his allegation that Ambac Stock was "artificially inflated" and that this fact alone required Defendants to sell the Stock, remove it as an option, and disclose the alleged artificial inflation. Two circuit courts have recently held that the existence of artificial inflation in an employer security does not trigger a fiduciary duty to sell.  In *Kirschbaum*, the Fifth Circuit stated that there is nothing unique about "artificial inflation" that requires a fiduciary to act:

> [T]here is no principled difference between how a fiduciary should respond to "artificial inflation" of a stock price as opposed to other sorts of negative insider information.  Consequently, the standard of judicial

> review applicable to such decisions should not generally turn on pleading
> artifices. The *Moench* presumption logically applies to *any* allegations of
> fiduciary duty breach for failure to divest an EIAP or ESOP of company
> stock.

526 F.3d at 254 (emphasis added). And in *Harzewski v. Guidant Corp.*, Judge Posner considered

whether defendants ran afoul of ERISA when they allegedly knew that Guidant stock was

artificially inflated but failed to sell it:

> It probably would have been unlawful, moreover, for Guidant to sell the
> Guidant stock held by the pension plan on the basis of inside knowledge
> of the company's problems. If so, there are no damages, and indeed no
> breach of fiduciary duty; for the fiduciary's duty of loyalty does not
> extend to violating the law.

489 F.3d 799, 808 (7th Cir. 2007). *See also Kirschbaum*, 526 F.3d at 256 (holding that

"fiduciaries *may not trade for the benefit of plan participants* based on material information to

which the general shareholding public has been denied access.") (emphasis added).[21] The thrust

of these decisions is that artificial inflation does not trigger a duty to sell the allegedly inflated

employer securities under ERISA and, in any event, selling artificially inflated stock would be

illegal. *See also Edgar*, 503 F.3d at 350; *In re McKesson HBOC. Inc. ERISA Litig.*, 2002 WL

31431588, at *6-7 ("Fiduciaries are not obligated to violate the securities laws in order to satisfy

their fiduciary duties.") (citing Restatement (Second) Trusts §166, cmt. a); 29 U.S.C. §1144(d)

("Nothing in [ERISA] shall be construed to alter, amend, modify, invalidate, impair, or

supersede any law of the United States. . . .").

Moreover, it is no answer to say – as Plaintiff attempts to in his Complaint– that the Plan

fiduciaries should have disclosed the "artificial inflation" of the Stock price and sold the Stock to

avoid subsequent losses. Under the "efficient market hypothesis," public disclosure of the

---

[21]   *See also Wright* at 1098 n.4 ("The *Moench* standard seems problematic to the extent that it inadvertently encourages corporate officers to utilize inside information for the exclusive benefit of the corporation and its employees. *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 882 (N.D. Ill. 2009)(same).

allegedly concealed information would have caused an immediate correction to the stock price, and the Plan and its participants could not have avoided the price drop, precluding any claim for damages. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 200 (2d Cir. 2008) (quoting *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988)); *Edgar*, 503 F.3d at 350 ("had the . . . defendants 'publicly released any adverse information '. . . 'such disclosure would have resulted in a swift market adjustment.'  Therefore . . . the Plans would have sustained the same losses they incurred when the Company publicly announced the quarterly results in April 2005")(citation omitted); *Avon*, at *15 ("if the plan fiduciary disclosed any arguably material adverse information to the participants, precipitating a rash of selling, that would likely cause a sharp decline in the share price, thus damaging the Plan").

Similarly, the Plan fiduciaries could not have avoided the alleged losses because a cessation of further purchases of Ambac Stock – in violation of the Plan's clear terms – would have required the same disclosure with the same effect.  *See* 29 U.S.C. §1104(a)(1)(D) (requiring fiduciaries to follow plan's terms); Regulation FD, 17 C.F.R. § 243.100 (requiring simultaneous public disclosure).  In sum, allegations of artificial inflation in the Ambac Stock do not, as a matter of law, establish an abuse of discretion by any Defendant.

### 4.    Even If Count I Is A Viable Claim, It Cannot Extend Beyond April 23, 2008.

Finally, even if Count I could survive despite the above-stated bases for dismissal, the claims cannot extend beyond April 23, 2008.  The Complaint alleges that Ambac Stock was artificially inflated starting on October 25, 2006 because the Company and certain Defendants failed to disclose negative financial information.  The Complaint then alleges that from November 2007 until April 23, 2008, the Company made a series of public statements revealing Ambac's deteriorating financial condition.  (Compl. ¶¶116-138).  The disclosure of this

information would have eliminated any alleged artificial inflation in the Ambac Stock.  (*See* Securities Action Consolidated Amended Class Action Complaint, ¶¶308-09, 328-29).  Thus, by April 23, 2008, according to the Complaint, the market price of the stock was no longer artificially inflated.  *See supra at* 23 (under the "efficient market hypothesis" all publicly-available information immediately is absorbed into the stock's price on the exchange).  At that point, any notion that the fiduciaries were in a better position than the market to predict the future value of the Ambac Stock disappeared.  *Summers*, 453 F.3d at 412 (stating that the argument that the plan fiduciaries "should have outsmarted the market and is not a correct interpretation of the duty of prudent management of trust funds").

Accordingly, even if allegations of artificial inflation were sufficient to meet Plaintiff's pleading burden, the Ambac Stock would cease to be an imprudent investment no later than April 23, 2008 and Plaintiff's allegation that the Stock remained imprudent until November, 2009 must be dismissed.

    **D.**    **To The Extent The Complaint Alleges That The Plan Administrative Committee Breached Its Fiduciary Duty Of Prudence By Not Disclosing Information Concerning Ambac's Financial Status, That Claim Is Not Cognizable Under ERISA.**

While Plaintiff does not overtly raise fiduciary misrepresentation claims under ERISA, the Complaint alleges failure to disclose information concerning a shift in Ambac's business from insuring only municipal bonds to insuring structured financial products, a loosening of its underwriting standards, and the Company's exposure to losses.  (*See* Compl. ¶¶6, 44-48).[22]  Of

---

[22]    The Complaint also does not assert a claim that Defendants committed fiduciary breaches under ERISA in the form of affirmative misrepresentations aside from contending that the Plan's SPDs "incorporated by reference the SEC filings described below, which contained inaccurate or incomplete information regarding the financial condition of Ambac and its business operations.' (Compl. ¶38).  To the extent Plaintiff is alleging that Defendants are liable under ERISA for any of the public statements noted in the Complaint, this claim similarly fails.  *E.g., Gearren*, 690 F. Supp. 2d at 272 (SEC filings, even if incorporated into plan documents, are not actionable under ERISA when their content is not "intentionally connect[ed] to statements about plan benefits."); *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *7 ("[S]tatements concerning a

course, the information allegedly withheld is the same information that allegedly should have been disclosed under the securities laws and ERISA's disclosure requirements do not overlap or supersede those requirements.  29 U.S.C. §1144(d); *Edgar v. Avaya*, 503 F.3d 340, 350 (3d Cir. 2007) (in affirming dismissal of plaintiffs' complaint, court held that defendants were not required to inform participants of adverse corporate developments and that ERISA fiduciaries are not required to "'give investment advice' or 'to opine on' the stock's condition.") (internal citations omitted); *Avon*, 2009 WL 848083, at *15 (rejecting plaintiffs' "failure-to-warn" theory in stock-drop claim:  "In substance, this is a claim premised on an assumed obligation of plan fiduciaries to disclose corporate inside information.  This theory fails as a matter of law."); *In re Citigroup*, 2009 WL 2762708, at *21 (dismissing failure-to-disclose claim in stock-drop lawsuit because there is "no ERISA provision requiring that fiduciaries disclose information bearing on an employer's financial condition;" specifically in the context of "information about the financial status of plan investments."); *Gearren*, 690 F. Supp. 2d at 271 (in dismissing "stock-drop" complaint, holding that omission claim failed to state a claim because "Defendants have no affirmative duty under ERISA to disclose information about the company's financial condition to plan participants.").[23]

Accordingly, to the extent the Complaint can be read to assert claims of breach of fiduciary duty for failure to disclose information about Ambac, it must be dismissed.

---

company's financial condition become subject to ERISA fiduciary duties only if they are made in an ERISA fiduciary capacity, which means that the statements are made by the plan administrator and are intentionally connected to statements regarding a plan's benefits.").

[23] *See also In re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA, 2005 WL 1431506, at *7 (N.D. Cal. March 31, 2005) (ERISA's disclosure requirement "is limited to the disclosure of information about the plan, plan benefits or plan administration); *Hill v. BellSouth Corp.*, 313 F. Supp. 3d 1361, 1369 (N.D. Ga. 2004) ("[T]he mere fact that an ERISA plan consists of, at least in part, in employer stock does not mean that that ERISA fiduciary duty to disclose plan-related information to beneficiaries is transformed into a general duty to disclose the financial details of the business.").

**E.    Plaintiff's Breach Of Loyalty (Count II) And Failure To Monitor (Count III) Claims Fail As A Matter Of Law Because They Are Derivative And Conclusory.**

Plaintiffs' Duty of Loyalty (Count II) and Failure to Monitor (Count III) are premised on the alleged imprudence of Ambac Stock has a Plan investment.  Because Count I fails as a matter of law for the reasons set forth above, Counts II and III must also be dismissed.

**1.    Count II (Conflict of Interest) Does Not Pass Muster Under *Twombly* and *Iqbal*.**

If the Court chooses to evaluate the adequacy of Count II, it will note that all Defendants are alleged to have breached their duty of loyalty by failing to engage independent fiduciaries and by allegedly placing their interests above Plan participants' interests.  (Compl. ¶¶195-201).  Plaintiff's allegation that Defendants should have engaged independent fiduciaries fails, since an outside independent fiduciary would have no more discretion to take action in conflict with the Plan's terms mandating investment in Ambac Stock than the Defendants did.  *See supra* Section IV.A.  Moreover, an independent fiduciary would not have inside knowledge of the alleged artificial inflation that, according to the Complaint, triggered a duty to sell.  *Cf. Summers*, 453 F.3d at 408 ("A trustee is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stocks traded on it . . . .").

Count II alleges breach of loyalty by simply noting the role each Defendant played in his or her corporate capacity for Ambac (for example, Robert Eisman was Controller of Ambac and Ambac Assurance).  (Compl. ¶¶67-69).  These allegations do not survive scrutiny under *Twombly*, 550 U.S. 544, and *Iqbal*, 129 S. Ct. 1937; *Avon*, at *17, (plaintiff must "plead a basis for inferring that the [] defendants did anything in their fiduciary capacities that was unlawful or contrary to the interests of the Class, or that they did so to serve their own private interests at the expense of the Class or Plan.").  Similarly, the allegation that Defendant Gregg L. Bienstock sold

27

personal stock holdings during the class period, (Compl. ¶65), fails to explain how this conflicted with his fiduciary duties or harmed the Plan.  Indeed, corporate officers are expressly authorized to serve as fiduciaries under ERISA and sell their personally held stock.  29 U.S.C. §1108(c)(3); *Citigroup*, at *26 (dismissing conflict of interest claim asserting that defendants sold stock or possessed stock-based compensation).  *See also Brieger v. Tellabs,* 629 F. Supp. 2d 848 (N.D. Ill. 2009) (holding that the Tellabs 401(k) plan fiduciaries did not breach their duty of loyalty by merely owning employer stock); *In re Huntington Bancshares, Inc. ERISA Litig.*, 620 F. Supp. 2d 842, n.6 (S.D. Ohio 2009) (dismissing allegations that defendants had conflict of interest because they were compensated in form of company stock).

Taken at face value, Plaintiff's claim is simply that Bienstock engaged in insider trading and should have included the Plan in his scheme.  Accordingly, Count II must be dismissed.

### 2. Count III (Failure to Monitor Other Fiduciaries) Fails As a Matter Of Law Because It Includes Only Conclusory Allegations.

The Failure to Monitor claim (Count III) alleges that all Defendants failed to ensure that the Plan Administrative Committee "had access to knowledge about business problems which made Ambac stock imprudent investment," and "appreciated risk of significant investment of retirement savings in Ambac stock."  (Compl. ¶¶195-213).  However, "[t]o state a claim for failure to monitor, plaintiffs must allege that the appointees failed to meet their own obligations." *Avon*, at *16.  Under the Plan, responsibility for the Plan investments was the exclusive province of the Plan Investment Committee, not the Plan Administrative Committee.

Although it gives the Plan Investment Committee no discretion over Ambac Stock, the Plan designates the Plan Investment Committee as the "Named Fiduciary" for investing Plan assets, and defines it as "the committee that administers the Plan with respect to the selection of Investment Funds and Investment Managers and the formulation of investment policy for the

assets of the Plan." (Plan, Definition, p. 7). The Plan Administrative Committee may "advise" the Plan Investment Committee, but has neither the authority nor the discretion to direct plan investment decisions. (Plan, §11.5 (enumerating powers and duties of the Plan Administrative Committee.))

While the Complaint formulaically alleges that Defendants had the authority "to appoint, evaluate and monitor other fiduciaries" (Compl. ¶204), liability cannot be imposed where the appointing fiduciaries lacked notice of "possible misadventure by their appointees." *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1132 (N.D. Ind. 1991); *see also Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 861, 901 (S.D. Tex. 2004) (no breach of duty to monitor in absence of allegations that directors exercised de facto control over appointees or had notice of appointees' incompetence or wrongdoing).[24] The Complaint does not allege that Defendants had notice of "possible misadventure" by the Plan Investment Committee, but instead relies on a "formulaic recitation of the elements of a cause of action," which "will not do." *Twombly*, 127 S. Ct. at 1964-65. Finally, because Plaintiff fails to identify what information should have been provided by Defendants to the monitored fiduciaries, his failure-to-monitor claim fails for this reason as well. *See Iqbal*, 129 S. Ct. 1949 (allegations unsupported by "factual content" fail to satisfy Rule 8).

---

[24]   Moreover, to the extent that any Defendants were in a position to appoint members of the Plan Investment Committee, any duty to monitor flowing from a duty to appoint fiduciaries is a limited one. *See* 29 C.F.R. §2509.75-8 (where Board of Directors is responsible for the selection and retention of plan fiduciaries, Board members' own fiduciary responsibility, "and, consequently, their liability, *is limited to the selection and retention of fiduciaries*. . .") (emphasis added). A person with the authority to appoint and remove fiduciaries is "not obligated to examine every action taken by [the fiduciary]" and the duty to monitor does not encompass a front-line responsibility to "monitor[] whether [company stock] was a prudent investment." *Lingis*, 649 F. Supp. 2d 861, 882 (N.D. Ill. 2009) (appointing fiduciaries "were not required to monitor the prudence of the individual investments offered under the Plan. Such a broad duty to monitor would undermine the entire rationale of creating a specialized committee tasked with determining what investments should be offered under the Plan."); *see also In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d 1328, 1339 (N.D. Okla. 2003) (duty to monitor does not encompass "the power to control investment options or to communicate Plan information."). Accordingly, Defendants had no duty under the Plan's terms or the law to undermine the Committee or its members.

**F.      Even Assuming Discretion To Remove Ambac Stock From The Plan Existed, Only Defendants Leonard And Stevens Are Proper Individual Defendants.**

The Plan, as noted above, makes clear that members of the Plan Administrative Committee have only finite responsibilities, none of which confers discretion to remove Ambac Stock from the Plan.[25]  The Complaint makes no additional factual allegations to support the claim that the Plan Administrative Committee, the Plan Administrator, and the individual Defendants had any fiduciary responsibilities for Ambac Stock in the Plan.  Indeed, "a person is a fiduciary only "to the extent" he "has or exercises specified authority, discretion or control over a plan or its assets."  *Kirschbaum*, 526 F.3d at 251 (citing 29 U.S.C. §1002 (21)(A)); *Lanfear v. Home Depot, Inc*., Case No. 1:07-CV-197-ODE, 2010 WL 2427413, at *9 (N.D. Ga. June 7, 2010) (dismissing similar allegations where Administrative Committee had no responsibility for plan investments).  Thus, "[a]n ERISA fiduciary for one purpose is not necessarily a fiduciary for other purposes."  *Kirschbaum,* 526 F.3d at 251.  This Court has dismissed prudence claims against defendants where the complaint failed to allege sufficient facts establishing that they had discretion over the decision to offer employer stock as an investment and should do so here.  *Fisher v. JP Morgan Chase & Co.*, No. 03 Civ. 3252 (SHS), 2010 WL 1257345, at *5 (S.D.N.Y. March 31, 2010).[26]

By shotgun pleading against multiple Defendants, almost all of whom have no fiduciary responsibility for Ambac Stock, Plaintiff accomplishes nothing other than to multiply this

---

[25]   While Defendants Leonard and Stevens admittedly were on the Plan Investment Committee that was responsible for selecting the Investment Funds available to Plan participants, none of the other Defendants served on the Plan Investment Committee during the alleged class period.  (*See* Kelly Decl., ¶4).

[26]   If Plaintiffs are contending these individuals are "functional" fiduciaries, then they have to plead factual allegations establishing their exercise of discretionary control over Plan assets.  The Complaint contains no such allegations.  *See Lehman Bros*., 683 F. Supp 2d at 300 (plaintiffs failed to allege sufficient factual basis to conclude that director defendants were functional fiduciaries); *Harris v. Amgen, Inc.*, Case No. Cv 07-5442, 2010 WL 744123, at *6 (C.D. Cal. March 2, 2010) (same).

litigation while inconveniencing these Defendants and ultimately the Court.  Therefore the Court should dismiss Count I as to all Defendants except Leonard and Stevens.

### 1.    The Company Was The Plan Sponsor And Is Not A Proper Defendant.

Claims under ERISA §502(a)(2) must be brought against fiduciaries.  *See generally* 29 U.S.C. §§1109; *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  ERISA defines a "fiduciary" one who (i) exercises discretionary authority or control in managing the plan or disposing of its assets; (ii) renders investment advice regarding property of the plan: or (iii) has discretionary authority or responsibility in administering the plan.  29 U.S.C. §1002(21)(A). Because the Complaint does not allege that Ambac is a fiduciary, Plaintiff's claims against Ambac must be dismissed.

It is beyond question that Ambac's sponsorship of the Plan, (Compl. ¶36), does not give rise to fiduciary status, as it is merely a settlor function.  *See Hughes Aircraft*, 525 U.S. at 443.  Plaintiff alleges that Ambac was responsible through its Board of Directors for appointing and monitoring the Plan Administrator and key fiduciaries.  (Compl. ¶41).  The Plan documents contradict this allegation, delegating the power to appoint the fiduciaries to the Plan Administrative and Plan Investment Committees to the Board's Compensation Committee.  Plan §11.2(b)(1).

To the extent Plaintiff seeks to hold Ambac responsible for the actions of its Board through the doctrine of respondeat superior, a number of courts have rejected this theory.  *See In re Mut. Funds Inv. Litig.,* 403 F. Supp. 2d 434, 447 n.15 (D. Md. 2005); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985); *Crowley.* 234 F. Supp. 2d at 228; *Tool v. Nat'l Employee Benefit Servs., Inc.,* 957 F. Supp. 1114, 1121 (N.D. Cal. 1996); *see generally Mertens v. Hewitt Assocs.,* 508 U.S. 248, 254 (1993) (noting Supreme Court's "unwillingness to

infer causes of action in the ERISA context, since that statute's carefully crafted and detailed

enforcement scheme provides 'strong evidence that Congress did not intend to authorize other

remedies that it simply forgot to incorporate expressly."').

The Complaint also alleges in conclusory fashion that Ambac "exercises discretionary

authority with respect to managing and administering the Plan or managing and disposing of the

Plan's assets."  (Compl. ¶36).  However, the Plan document states otherwise:  the Plan

Investment Committee is responsible for determining the funds into which the Plan's assets may

be invested by participants.  (Plan §11.6).  In the face of similar conflicts, courts have concluded

that an employer plan sponsor did not act as a fiduciary under ERISA.  *See, e.g., In re Williams*

*Cos. ERISA Litig.*, 271 F. Supp. 2d 1328, 1338 (N.D. Okla. 2003); *Crowley*, 234 F. Supp. 2d at

228.  This Court should reach the same conclusion and dismiss all claims against Ambac.

### 2.     The Plan Administrative Committee Is Not A Proper ERISA Defendant.

Finally, even apart from the fact that the Plan Administrative Committee lacked fiduciary

responsibility for the determination of the investment options under the Plan, Plaintiff's claims

against the Plan Administrative Committee should be dismissed for the fundamental reason that

the committee is not a proper entity to be sued under ERISA.

ERISA imposes liability on "[a]ny person who is a fiduciary with respect to a plan who

breaches any other responsibilities, obligations, or duties imposed upon fiduciaries . . ."  29

U.S.C. §1109(a).  In turn, ERISA defines a person as "an individual, partnership, joint venture,

corporation, mutual company, joint-stock company, trust, estate, unincorporated organization,

association, or employee organization."  29 U.S.C. §1002(9).  Plan committees are not "persons"

who can be sued under ERISA for breach of fiduciary duty.  *See Tatum v. R.J. Reynolds Tobacco*

*Co.*, Case No. 1:02CV00373, 2007 WL 1612580, at *8 (M.D.N.C. May 31, 2007) ("The

language of Section 3(9) clearly and unambiguously sets out eleven categories of 'persons' subject to personal liability in a breach of fiduciary duty action under ERISA. Given the comprehensive nature of ERISA, the omission of 'committee' from that definition cannot be considered simply a drafting oversight. Committees are, therefore, not properly subject to ERISA breach of fiduciary duty claims."); *see also David v. Alphin*, Case No. 3:07CV11, 2008 WL 5244483, at *9 (W.D.N.C. Jul. 23, 2008) (magistrate recommendation) (same), report and recommendation adopted by 2008 WL 5244504 (W.D.N.C. Dec. 15, 2008).  Accordingly, the Plan Administrative Committee is not a proper party to this action, and all claims against it must be dismissed.

## V.        CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.


Dated: August 17, 2010                    Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

/s/      Gregory C Braden
Gregory C. Braden (admitted pro hac vice)
Christopher A. Weals (admitted pro hac vice)
1111 Pennsylvania Avenue NW
Washington, DC  20004
Phone: (202) 739-3000
Fax:    (202) 739-3001
Email: gbraden@morganlewis.com
           cweals@morganlewis.com

Jamie M. Kohen (jk0273)
101 Park Avenue
New York, NY 10178-0060
Phone: (212)309-6343
Fax:    (212)309-6001
Email: jkohen@morganlewis.com

*Attorney for Defendants Ambac Financial Group, Inc., Ambac Plan Administrative Committee, Sean T. Leonard, Gregg L. Bienstock, Diana Adams, Robert Eisman, Timothy Stevens, and Anne Gill Kelly*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Memorandum of Law in support of

Motion to Dismiss has been filed and served by Notice of Electronic Filing pursuant to Rule

5(b)(2)(E), Federal Rules of Civil Procedure on this 17th day of August, 2010.


Stephen J. Fearon, Jr.
Caitlin Duffy
Garry T. Stevens, Jr.
32 East 57th Street, 12th Floor
New York, New York 10022

*Attorneys for Plaintiff*



/s/      Jamie M. Kohen
Jamie M. Kohen



DB1/65447934.5