# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____
                            :

KARTHIKEYAN V. VEERA,            :
                            :

            Plaintiff,      :     Civil Action No. 10-cv-4191 (HB)

    - against -           :

                            :     **ORAL ARGUMENT REQUESTED**

AMBAC PLAN ADMINISTRATIVE  :
COMMITTEE, et al.,         :
                            :

           Defendants.    :
_____:

_____

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS THE AMENDED COMPLAINT
_____

MORGAN LEWIS & BOCKIUS LLP
Gregory C. Braden (admitted pro hac vice)
Christopher A. Weals (admitted pro hac vice)
1111 Pennsylvania Avenue NW
Washington, DC  20004
Phone: (202) 739-3000
Fax:    (202) 739-3001
Email: gbraden@morganlewis.com
       cweals@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Jamie M. Kohen (jk0273)
101 Park Avenue
New York, NY 10178-0060
Phone: (212) 309-6343
Fax:    (212) 309-6001
Email: jkohen@morganlewis.com

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................ 5

        A.      The Parties ................................................................................................ 5

        B.      Savings Incentive Plan ............................................................................ 6

                1.      The Plan's Investment Options.................................................... 6

                2.      The Plan Administrative and Investment Committees and Ambac's
                        Compensation Committee............................................................ 7

        C.      Plaintiff's Allegations ............................................................................. 8

        D.      Economic Context of Plaintiff's Allegations .................................... 10

III.    STANDARD OF REVIEW .......................................................................... 13

IV.     ARGUMENT ................................................................................................ 13

        A.      The Plan Mandates The Offering Of Ambac Stock, Therefore Neither The
                Plan Nor ERISA Gives The Fiduciaries Discretion To Eliminate The
                Stock Fund And Count I Fails To State A Claim ................................. 13

        B.      The Plan Fiduciaries Were Not Required To Diversify Out Of Ambac
                Stock, Since The Plan Is Exempt From ERISA's Duty Of Diversification
                For Its Investment In Employer Securities ......................................... 16

        C.      Even If The Fiduciaries Could Be Deemed To Have Discretion Under The
                Plan And ERISA To Remove The Stock Fund From The Plan, Count I
                Fails To Plead Facts Establishing An Abuse Of Discretion By Any
                Defendant ................................................................................................ 18

                1.      The Abuse Of Discretion Standard Of Review Has Been Widely
                        Adopted And Applied By The Courts To Dismiss Inadequately
                        Pled Claims That Fiduciaries Breached Their ERISA Duty Of
                        Prudence By Failing To Sell Employer Securities. ................................. 19

                2.      The Amended Complaint Fails To Allege Facts Establishing That
                        Any Defendant Abused His Or Her Discretion And Therefore Fails
                        To Overcome The "Presumption Of Prudence." ..................................... 23

                3.      The Alleged "Artificial Inflation" Does Not Itself Trigger a Duty
                        To Sell the Ambac Stock, Moreover Doing So Would Violate The
                        Securities Laws. ....................................................................................... 27

        D.      To The Extent The Amended Complaint Alleges That The Defendants
                Breached Their Fiduciary Duty Of Prudence By Not Disclosing
                Information Concerning Ambac's Financial Status, That Claim Is Not
                Cognizable Under ERISA ................................................................................ 29

E.     Even Assuming Discretion To Remove Ambac Stock From The Plan Existed, Only The Defendants Who Were Members of the Investment Committee During the Class Period Are Proper Individual Defendants Under Count I. .................................................................................. 31

F.     Plaintiff's Failure To Monitor (Count II) Claim Fails As A Matter Of Law Because It Is Derivative And Conclusory ............................................... 33

G.    Plan Committees Are Not Proper ERISA Defendants ........................................ 35

V.    CONCLUSION ............................................................................................. 35

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ..........................................................4, 13, 26, 34

*In re Avon Products, Inc. ERISA Litig.*, Case No. 05-Civ.-6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009), *aff'd by district court*, 2009 WL 884687 (S.D.N.Y. Mar. 30, 2009)...................................................................................................... *passim*

*In re Bank of America Corp. Secs., Derivative & ERISA Litig.*, No. 09 MD 2058 (PKC), 2010 WL 3448197 (S.D.N.Y. Aug. 27, 2010) ..................................20, 22, 25

*Basic v. Levinson*, 485 U.S. 224 (1988)............................................................................28

*In re Bausch & Lomb, Inc. ERISA Litig.*, No. 06-CV-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) ......................................................................17, 21, 30, 33

*In re Beazer Homes USA, Inc. ERISA Litig.*, No. 07-0952, 2010 U.S. Dist. LEXIS 33476 (N.D. Ga. Apr. 2, 2010) .................................................................................18

*Beck v. PACE International Union*, 551 U.S. 96 (2007) ...................................................14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................4, 13, 34

*Benitez v. Humana, Inc.*, No. 3:08cv-211-H, 2009 WL 3166651 (W.D. Ky. Sept. 30, 2009) ................................................................................................................22

*Brieger v. Tellabs*, 629 F. Supp. 2d 848 (N.D. Ill. 2009) ....................................................1

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009).................................................................26

*Brown v. American Life Holdings, Inc.*, 190 F.3d 856 (8th Cir. 1999) ............................17

*In re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) .............................................................................................30

*In re Citigroup ERISA Litig.*, Case No. 07-Civ.-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009), *appeal docketed*, No. 09-3804-cv (2d Cir. Sept. 9, 2009) .................................................................................................................... *passim*

*In re Coca-Cola Enterp. Inc., ERISA Litig.*, No. 06-953, 2007 WL 1810211 (N.D. Ga. June 20, 2007) ...........................................................................................22

**TABLE OF AUTHORITIES continued**

PAGE(S)

*In re Computer Sciences Corp. ERISA Litig.*, 635 F. Supp. 2d 1128 (C.D. Cal. 2009), *aff'd*, Nos. 09-56190, 09-56248, 2010 WL 3784702 (9th Cir. Sept. 20, 2010) ..................................................................................................................23

*Conkright v. Frommert*, 130 S. Ct. 1640 (2010) ...............................................................16

*In re Constellation Energy Group, Inc. ERISA Litig.*, Civil Action No. CCB-08-2662, 2010 WL 3221821 (D. Md. Aug. 13, 2010) ......................................................26

*Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267 (11th Cir. 2005) ...............................31

*Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002) .......................16, 27, 31

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) ...........................................14

*In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681 (W.D. Tex. 2008)..............................22

*DiFelice v. US Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd*, 497 F.3d 410 (4th Cir. 2007) .................................................................................................1

*Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir. 1983) .................................................23

*Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004)...................................34

*Edgar v. Avaya*, 503 F.3d 340 (3d Cir. 2007)............................................................ *passim*

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ...........................................16

*Fisher v. JP Morgan Chase & Co.*, No. 03 Civ. 3252 (SHS), 2010 WL 1257345 (S.D.N.Y. March 31, 2010)...................................................................................21, 31

*In re Ford Motor Co. ERISA Litig.*, 590 F. Supp. 2d 883 (E.D. Mich. 2008) ..................19

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) .............................................12

*Gearren v. McGraw-Hill Cos., Inc.*, 690 F. Supp. 2d 254 (S.D.N.Y. 2010), *appeal docketed*, No. 10-792 (2d Cir. Mar. 4, 2010)....................................................1, 20, 30

*Harris v. Amgen, Inc.*, Case No. Cv 07-5442, 2010 WL 744123 (C.D. Cal. Mar. 2, 2010) .............................................................................................................32

*Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007) .............................................28

## TABLE OF AUTHORITIES continued

PAGE(S)

*Herrera v. Wyeth*, Case No. 08-Civ.-4688, 2010 WL 1028163 (S.D.N.Y. Mar. 17, 2010) ................................................................................................1, 20

*Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1369 (N.D. Ga. 2004) ...........................30

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) ....................................14

*In re Huntington Bancshares, Inc. ERISA Litig.*, 620 F. Supp. 2d 842 (S.D. Ohio 2009) ................................................................................................25

*Johnson v. Radian Group, Inc.*, No. 08-2007, 2009 WL 2137241 (E.D. Pa. July 16, 2009) ................................................................................................22, 23, 33

*Keach v. U.S. Trust Co.*, 419 F.3d 626 (7th Cir. 2005) ....................................23

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008)........................... *passim*

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995)...................................................18, 19, 26

*Landgraff v. Columbia/HCA Healthcare Corp. of Am.*, No. 3-98-0090, 2000 WL 33726564 (M.D. Tenn. May 24, 2000) ....................................................25

*Lanfear v. Home Depot, Inc.*, Case No. 1:07-CV-197-ODE, 2010 WL 2427413 (N.D. Ga. June 7, 2010) ............................................................................31

*In re Lehman Brothers. Secs. & ERISA Litig.*, 683 F. Supp. 2d 294 (S.D.N.Y. 2010) ................................................................................................21, 22, 32

*In re Lehman Brothers Secs. & ERISA Litig.*, Case No. 09-MD-2017, 2010 WL 354937 (S.D.N.Y. Feb. 2, 2010)*, appeal docketed*, No. 10-712 (2d Cir. Mar. 2, 2010) ................................................................................................1

*Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861 (N.D. Ill. 2009) ...................................28, 34

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)...................................................14

*Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) ...................................................17

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d. Cir. 2007) ...............................5

*In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030 RMW, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ...........................................................28

## TABLE OF AUTHORITIES continued

PAGE(S)

*Mellot v. Choicepoint, Inc.*, 561 F. Supp. 2d 1305 (N.D. Ga. 2007) ................................18

*Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union*, 221 F.2d 644
    (6th Cir. 1995) ............................................................................................32

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ..............................................16

*Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) .................................................... *passim*

*Morrison v. Moneygram Int'l Inc.*, 607 F. Supp. 2d 1033 (D. Minn. Mar. 25,
    2009) ...........................................................................................................20

*Nelson v. IPALCO Enterprises, Inc.*, 480 F. Supp. 2d 1061 (S.D. Ind. 2007), *aff'd
    sub nom., Nelson v. Hodowal*, 512 F.3d 347 (7th Cir. 2008) ...........................1, 25, 26

*Nelson v. Hodowal*, 512 F.3d 347 (7th Cir. 2008).............................................................1

*Newton v. Van Otterloo*, 756 F. Supp. 1121 (N.D. Ind. 1991) ........................................34

*Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262 (N.D. Ga. 2006).................................18

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008).........................................................20

*Quan v. Computer Sciences Corp.*, No. 09-56190, 09-56248, 2010 WL 3784702
    (9th Cir. Sept. 30, 2010) ................................................................................1, 19, 22

*In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606
    (N.D. Tex. 2008)........................................................................................13, 22, 33

*In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646 (S.D. Tex. 2004) ...............15, 32

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)...............................................................5

*In re SLM Corp. ERISA Litig.*, No. 08 Civ. 4334 (WHP), 2010 WL 3910566,
    (S.D.N.Y. Sept. 24, 2010) ................................................................................ *passim*

*Shirk v. Fifth Third Bancorp.*, No. 05-cv-049, 2009 WL 692124
    (S.D. Ohio Jan. 29, 2009) ...............................................................................25

*Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310 (N.D. Ga. 2006) .......................18, 22

*In re Sprint ERISA Litig.*, 388 F. Supp. 2d 1207 (D. Kan. 2004) .....................................26

viii

## TABLE OF AUTHORITIES continued

PAGE(S)

*Summers v. State St. Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006) ..............................1

*Tatum v. R.J. Reynolds Tobacco Co.*, Case No. 1:02CV00373, 2007 WL 1612580
  (M.D.N.C. May 31, 2007)...............................................................................35

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*, 546
  F.3d 196 (2d Cir. 2008).................................................................................28

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ...................................................30

*In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2010 WL 3081359
  (W.D.N.C. Aug. 6, 2010) .............................................................................21

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997) .........................................32

*In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003)..............15, 34

*Ward v. Avaya*, 299 F. App'x. 196, 200-201 (3d Cir. 2008) .............................26

*In re WorldCom ERISA Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003) .............................34

*Wright v. Medtronic, Inc.*, No. 09-cv-0443 (PJS/AJB), 2010 WL 1027808 (D.
  Minn. Mar. 17, 2010 ...............................................................................19, 20

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) .................1, 26, 28

### FEDERAL STATUTES and REGULATIONS

Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001 *et
  seq* ...............................................................................................................1

ERISA  § 3(9), 29 U.S.C. §1002(9)................................................................35

ERISA § 3(21)(A), 29 U.S.C. 29 U.S.C. § 1002(21)(A) ..................................14

ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B) .........................................29

ERISA § 404(a)(1)(c), 29 U.S.C. § 1104(a)(1)(c) .........................................16

ERISA § 404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D)........................................29

ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2) ........................................17, 18, 19

**TABLE OF AUTHORITIES continued**

PAGE(S)

ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3)(A) ..............................................................17

ERISA § 407(d)(3)(A), 29 U.S.C. §1107(d)(3)(A) ..........................................................6

ERISA § 409(a), 29 U.S.C. §1109(a) ..............................................................................35

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) .........................................................16

ERISA § 514(d), 29 U.S.C. §1144(d) ......................................................................28, 31

17 C.F.R. § 243.100..........................................................................................................29

29 C.F.R. § 2509.75-8.......................................................................................................34

**MISCELLANEOUS**

Alan Greenspan Testimony before the FCIC, (Apr. 7, 2010), available at
http://www.fcic.gov/hearings/pdfs/2010-0407-Greenspan.pdf, last visited Oct. 20,
2010……………………………………………………….……………..12

International Monetary Fund, *Global Financial Stability Report*, available at
  http://www.imf.org/external/pubs/ft/gfsr/2007/01/pdf/text.pdf, last visited Oct. 20,
  2010……………………………………………………………………..11

John Geanakoplos, *Solving the Present Crisis and Managing the Leverage Cycle*,
  (Dec. 2009), available at http://www.fcic.gov/hearings/pdfs/2010-0226-
  Geanakoplos.pdf, last visited on Oct. 20, 2010 ...........................................................3

Press Release, http://www.ambac.com/Press/031308.html, last visited on Oct. 20,
  2010.................................................................................................................................12

Speech to the Federal Reserve Bank of Chicago's 43rd Annual Conference on Bank
  Structure and Competition, Chicago, Illinois (May 17, 2007), available at
  http://www.federalreserve.gov/newsevents/speech/bernanke20070517a.htm, last
  visited Oct. 20, 2010……………………………..…………………………11

The Economic Outlook: Hearing Before the J. Econ. Comm., U.S. Cong. (Apr. 27, 2006)
  (testimony of Ben S. Bernanke, Chairman, Fed. Reserve), available at
  http://www.federalreserve.gov/newsevents/testimony/bernanke20060427a.htm, last
  visited October 20, 2010……………………………..…………………………...11

**TABLE OF AUTHORITIES continued**

**PAGE(S)**

Document showing the closing price of Ambac Financial Group, Inc. stock for October
25, 2006, as obtained from Yahoo Finance,
http://finance.yahoo.com/q/hp?s=ABK&a=09&b=25&c=2006&d=09&e=25&f=2006
&g=d…………………………..……………………….................................12

## I.   INTRODUCTION

Plaintiff brought this case under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001 *et seq.*, after the price of the Ambac Financial Group, Inc. ("Ambac") stock held in his 401(k) plan account fell as a result, he alleges, of the disclosure of the stock's "artificial inflation."  This case takes its place among the hundreds of others seeking to convert fraud-on-the-market securities claims into ERISA claims, despite the fact that the plaintiff is (derivatively) part of the putative class in a companion securities fraud action already pending.  Federal courts have rightly taken a dim view of these claims, dismissing many on Rule 12 motions[1] or motions for summary judgment.[2]  Those few cases that proceeded to trial have all resulted in judgments for the defendants.[3]  Defendants are not aware of a single final adjudication in favor of a plaintiff on the merits in an ERISA "stock drop" case.

Plaintiff's Amended Complaint does not warrant a departure from this pattern.  It targets the Administrative Committee of the Ambac Financial Group, Inc. Savings Incentive Plan (the "Plan"), the Plan Investment Committee, the Compensation Committee of the Ambac Board of Directors, and certain individual members of those committees, which all are alleged to have been responsible for the Plan's investment in publicly traded Ambac common stock ("Ambac

---

[1]      *See, e.g.*, *Edgar v. Avaya*, 503 F.3d 340 (3d Cir. 2007); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004); *In re SLM Corp. ERISA Litig.*, No. 08 Civ. 4334 (WHP), 2010 WL 3910566, at *8 (S.D.N.Y. Sept. 24, 2010); *In re Avon Prods., Inc. ERISA Litig.*, Case No. 05-Civ.-6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009) (magistrate recommendation), *aff'd by district court*, 2009 WL 884687 (S.D.N.Y. Mar. 30, 2009*); In re Herrera v. Wyeth*, Case No. 08-Civ.-4688, 2010 WL 1028163 (S.D.N.Y. Mar. 17, 2010)*; Gearren v. McGraw-Hill Co's, Inc.*, 690 F. Supp. 2d 254 (S.D.N.Y. 2010)*, appeal docketed*, No. 10-792 (2d Cir. Mar. 4, 2010)*; In re Lehman Bros. Secs. & ERISA Litig.*, Case No. 09-MD-2017, 2010 WL 354937 (S.D.N.Y. Feb. 2, 2010)*, appeal docketed*, No. 10-712 (2d Cir. Mar. 2, 2010); *In re Citigroup ERISA Litig.*, Case No. 07-Civ.-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009)*, appeal docketed*, No. 09-3804-cv (2d Cir. Sept. 9, 2009).

[2]      *See, e.g.*, *Quan v. Computer Sciences Corp.*, No. 09-56190, 09-56248, 2010 WL 3784702 (9th Cir. Sept. 30, 2010) (9th Cir. Sept. 30, 2010); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008); *Summers v. State St. Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006).

[3]      *See Brieger v. Tellabs*, 629 F. Supp. 2d 848 (N.D. Ill. 2009); *Nelson v. IPALCO Enters., Inc.*, 480 F. Supp. 2d 1061 (S.D. Ind. 2007), *aff'd sub nom., Nelson v. Hodowal*, 512 F.3d 347 (7th Cir. 2008); *DiFelice v. US Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd* 497 F.3d 410 (4th Cir. 2007).

Stock").  Like most ERISA "stock drop" lawsuits, the Amended Complaint borrows heavily

from a parallel securities fraud action pending in this Court, *In re Ambac Financial Group, Inc.*

*Secs. Litig.*, 08-Civ-411 (NRB) (the "Securities Action").  The Securities Action alleges that

purchasers of Ambac Stock between October 1, 2006 and April 22, 2008 bought at "artificially

inflated" prices due to fraudulent statements made by Ambac and several of its officers.

The Amended Complaint alleges in shotgun fashion that Defendants knew or should have

known – as the Securities Action defendants allegedly knew and failed to disclose – that Ambac

Stock was "artificially inflated" from October 1, 2006 until July 2, 2008,[4] and therefore breached

their fiduciary duties under ERISA by failing to sell off the Plan's Ambac Stock and permitting

Plan participants to continue to invest in it.  Under Plaintiff's theory, Plan fiduciaries should

have removed Ambac Stock as a Plan investment option no later than October 1, 2006.  This

claim for breach of ERISA fiduciary duties, styled as a "prudence claim" under Count I of the

Amended Complaint, should be dismissed for a number of reasons.

First, Plaintiff cites to no facts establishing or even implying that Ambac's viability as a

going concern was in question at the start of the class period, and the judicially noticeable

evidence is squarely to the contrary.  The Amended Complaint's reliance on events that occurred

years *after* the start of the class period (Am. Comp. ¶¶ 220-22), reveals its dependence on

hindsight, which cannot be used to judge the Defendants' conduct under ERISA.  The Amended

---

[4]     The original Complaint alleged a class period from October 25, 2006 until April 23, 2009.  Without
explanation, in response to Defendants' challenge to the class period in their prior motion to dismiss, Plaintiffs now
allege a class period shortened by almost ten months and add twenty-five days to the beginning of the class period.
Plaintiff's arbitrary selection of a class period displays the faulty nature of employing temporal class periods in
ERISA "stock drop" cases.  The selection of a class period by plaintiff's counsel that maximizes a drop in stock
price is not only self-serving but also illogical in light of the congressionally-expressed goals of encouraging
employer stock investments, as discussed below.  *See Avon*, 2009 WL 848083, at *3 n.7, *11 nn.25-26; *Edgar*, 503
F.2d at 349 n.13.  Indeed, counsel for Plaintiff was recently criticized by Judge Pauley in another ERISA "stock
drop" case for deliberately tacking an additional fifteen months onto the proposed class period "without adding any
substantive allegations relating to that interval," a tactic Judge Pauley regarded as "opportunistic rummaging."  *In re
SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *8.

Complaint tacitly acknowledges the global financial crisis that led to Ambac's financial problems, but refuses to acknowledge that virtually no one foresaw the depth and extent of the credit crisis that would ravage the financial markets and Ambac's business model.  Instead, Plaintiff seeks to hold Plan fiduciaries liable for failing to foresee the crisis and sell out in advance, something few if any investors accomplished.  As one Yale University Professor of Economics put it, "it was nearly impossible to foresee the devastating consequences of the multiple feedbacks between securities and houses embodied in the double leverage cycle."  John Geanakoplos, *Solving the Present Crisis and Managing the Leverage Cycle*, at 24 (Dec. 2009) (Ex. K).

Second, the Plan mandates that the Ambac Stock Fund be included in the Plan.  The Plan fiduciaries lacked discretion to remove it, and their failure to do so was not fiduciary conduct for which they may be held liable under ERISA.  Removing the Fund as an option in contravention of the Plan's terms would have eviscerated the congressionally-sanctioned goal of permitting employees the opportunity to obtain an ownership interest in the companies for which they work. In addition, the claim that Defendants should have sold all Ambac Stock is simply a claim that the Defendants had a duty to diversify the Ambac Stock Fund.  However, in keeping with congressional purpose, ERISA exempts such a plan's investment in company stock from ERISA's diversification requirement, and Plaintiff's claim that the Ambac Stock should have been sold is nothing other than a claim that it should have been diversified.

Third, Plaintiff's claim that Defendants had a duty to capitalize on the alleged fraud on the market by selling the Plan's stock before the fraud was "revealed" has been rejected by several courts, including this one, which have held that fiduciaries have no duty to engage in insider trading on behalf of ERISA plan participants.  These courts have also made clear that the

existence of "artificial inflation" does not trigger a duty under ERISA to sell "inflated" securities.

Finally, even if Defendants could be deemed to have fiduciary discretion to remove the Ambac Stock as a Plan option and could do so without violating the securities laws, the Amended Complaint does not come close to pleading facts sufficient to overcome the abuse of discretion standard that applies to the decisions of the Plan fiduciaries concerning the Ambac Stock. That legal pleading and proof standard requires a plaintiff to allege that, as of October 1, 2006, Ambac faced impending collapse. As noted above, he has not and cannot do so. The Amended Complaint itself and the judicially noticeable facts establish that at the beginning of (and during) the alleged class period, Ambac was a viable, going concern that suffered from the credit crisis in the same way as many other financial institutions. For all of these reasons, Plaintiff's Count I claim for failure to prudently manage the Plan's assets must be dismissed.

Count II alleges that the Compensation Committee of the Ambac Board of Directors and certain of its members are liable for the breaches alleged in Count I because the Committee appointed the Plan fiduciaries and failed to adequately monitor their conduct. Because this claim is derivative of and dependent upon the underlying claims in Count I. It must be dismissed with Count I. But Count II also independently fails to state a claim because it is supported by only conclusory allegations that are contradicted by the Plan and fail to satisfy the pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

In sum, the Amended Complaint seeks to paste an ERISA veneer over a common securities fraud claim. Because these claims are not viable as a matter of law, the Amended Complaint must be dismissed.

II.    BACKGROUND

A.    The Parties

Plaintiff Veera is a former employee of Ambac and was a participant in the Plan during the alleged class period.  He directed that all of his contributions be invested in the Ambac Stock Fund offered under the Plan despite being cautioned (as described below) about the risks of not diversifying his investments.  (2002 Summary Plan Description, Ex. B, at 4-5; 2008 Summary Plan Description, Ex. C, at Q26, p. 15).  Plaintiff brings claims on behalf of a purported class of Plan participants who held Ambac Stock through the Plan from October 1, 2006 to July 2, 2008. (Am. Comp. ¶ 5).

Ambac is a holding company with numerous subsidiaries that provide financial guarantee products and other financial services to clients in both the public and private sectors.  Its common stock is traded on the New York Stock Exchange.  Through its subsidiary Ambac Assurance Corporation ("Ambac Assurance"), Ambac sells insurance against default by issuers of public and structured finance obligations.

The named Defendants include the Plan Administrative Committee, the Plan Investment Committee, and certain of their members (together, the "Prudence Defendants"), and the Compensation Committee of the Board and certain members (together, the "Monitoring Defendants").  Of the individually-named Defendants, only five served on the Plan's Investment Committee during the alleged class period.  (Declaration of Anne Gill Kelly ("Kelly Decl."), ¶ 4).[5]

---

[5]    The Court may consider plan documents and public filings because these documents are integral to or expressly relied upon in the Amended Complaint.  *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d. Cir. 2007); *Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir. 2000); *Edgar*, 503 F.3d at 350 (considering SPD).

### B.    Savings Incentive Plan

Ambac is the sponsor of the Plan, which is an "eligible individual account plan" under ERISA.  29 U.S.C. § 1107(d) (3) (A).  Eligible Ambac employees can make voluntary contributions to the Plan, which are deducted from their paychecks.  (Plan, § 4.2, Ex. A).[6]  In addition, the Plan provides for a direct employer contribution of 6% of base salary compensation, an annual contribution to be awarded in the Company's discretion, and an employer matching contribution.  (Plan, §§ 4.6(a)-(c), 4.7).  At the start of the alleged class period, the employer matching contribution was 50% of the employee's contribution, up to 6% of the employee's annual base salary.  (Plan, § 4.7).  Effective January 1, 2007, the employer matching contribution was increased to 100% of the employee's contribution, up to 6% of the employee's annual base salary.  (Plan Amendment One, Ex. A).

### 1.    The Plan's Investment Options

The Plan offers a variety of investment options to Plan participants, including stock and bond mutual funds.  The 2002 Summary Plan Description ("SPD") distributed to Plan participants listed 18 investment fund options; the updated 2008 SPD included 33 investment options.  (Ex. B, Q-27, p. 14-15; Ex. C, Q-24, p. 12-13).  Plan participants are permitted to direct the investment of their Plan accounts among the various investment funds offered, and are free to change their investments at any time.  (Plan, §§ 5.1(a), (b)).

At all times during the alleged class period, the Plan required that Ambac Stock be offered as one of those investment funds:

> "Investment Fund" means each segregated or commingled fund or funds selected by the Plan Investment Committee from time to time as an alternative under the Plan for the investment of Plan assets; *provided, however, that the Ambac Financial Group, Inc. Stock Fund shall be an Investment Fund.*

---

[6]    All Exhibits referenced herein are attached to the Declaration of Jamie M. Kohen, filed herewith.

(Plan, p. 6) (emphasis added).  Plan participants were notified through the Plan's Summary Plan

Description of the Plan's company stock requirement:

> *The Plan requires that the Ambac Financial Group, Inc. Stock Fund be offered as an Investment Fund.*

(2008 SPD, Q24, p. 14).  The Plan gave the Investment Committee discretion to add and remove

the other investment funds.  Plan, p. 6 (defining "investment fund" as a "segregated or

commingled fund or funds selected by the Plan Investment Committee from time to time . . ."); 

Plan, § 11.6.  As noted above, however, there was one express exception to this provision of

discretion – Ambac Stock must be offered.

Participants were also alerted to the importance of diversifying their investments:

> If you invest more than 20% of your retirement savings in any one company or industry, your savings may not be properly diversified. Although diversification is not a guarantee against loss, it is an effective strategy to manage investment risk.

(2008 SPD, at Q26, p. 15) (emphasis added).  The 2002 SPD likewise notified participants of the

risk of investing in a single stock fund:

> . . . The Stock Fund is not a diversified investment and is not a mutual fund.  The Stock Fund is subject to the normal factors affecting the general level of stock prices and the specific factors affecting Ambac Financial Group, Inc.  Its share price and return will fluctuate.

(2002 SPD, p. 4-5).

### 2. The Plan Administrative and Investment Committees and Ambac's Compensation Committee

The Plan mandates the creation and maintenance of two discrete committees, the Plan

Administrative Committee and Plan Investment Committee, each with separate and independent

duties and responsibilities.  The members of these committees are appointed by Defendant

Compensation Committee of Ambac's Board of Directors.  (Plan § 11.2(a)).

The Plan Administrative Committee has responsibility "for the interpretation and construction of the Plan and final authority with respect to operation and administration of the Plan." (Plan, §11.5). In contrast, the Investment Committee "has the *exclusive* responsibility and authority to control and manage the assets of the Plan in accordance with the terms of the Plan and of the Trust." Plan § 11.6(a) (emphasis added). The Plan Investment Committee is "the committee that administers the Plan with respect to the selection of Investment Funds . . ." (Plan, Definition, p. 7). The SPD so informed Plan participants:

> The administration of the Plan with respect to the formulation of investment policy, the selection of Investment Funds and the monitoring of the performance of the selected Investment Funds are the responsibilities of the Plan Investment Committee.

(2002 SPD, p. 4). To this end, the Plan specifies that the "named fiduciary" for managing Plan assets is the Plan Investment Committee. (Plan §11.11). Thus, while the Plan Administrative Committee was generally responsible for plan administration, the Plan specifically limits the responsibility for the selection of investment options to the Plan Investment Committee.

The duties of Ambac's Compensation Committee are also specifically limited by the Plan's terms. It has the limited power and duty to:

1)      appoint the members of the Plan Administrative Committee and Plan Investment Committee; and

2)      evaluate the performance and policies of the Plan Administrative Committee and Plan Investment Committee and any Employee engaged in the management and administration of the Plan or Trust Fund.

(Plan, § 11.2).

### C.    Plaintiff's Allegations

Borrowing directly from the Securities Action, the Amended Complaint alleges that:

> (a) Ambac was exposed to billions of dollars of losses on high-risk transactions; (b) Ambac had significantly loosened and lowered its underwriting standards which was a fundamental change in its business;

(c) Ambac had sacrificed its financial security and stability by pursuing risky revenue growth through high-risk transactions that were failing or were in serious jeopardy of failing; (d) Ambac had improperly bolstered its reported financial results by overstating the value of its business and failing to properly mark-to-market Ambac's portfolio of high-risk securities, even as the market collapsed for the collateral underlying those securities; (e) The Company had far greater exposure to anticipated losses than it had disclosed;

(Am. Comp. ¶ 7).

Ultimately, Plaintiff complains that Ambac Stock fell to a trading price of $1.05 per share at the end of the purported class period.  (*Id.* ¶ 9).  Despite claiming that Ambac Stock was "no longer a prudent investment" by October 1, 2006 (*id.* ¶ 189), the Amended Complaint includes no factual allegations whatsoever suggesting that as of this date the Company's continued viability was at stake.  Moreover, by ending the class period on July 2, 2008, Plaintiff concedes that Ambac stock again became a "prudent investment" on that date.

Nonetheless, the Amended Complaint alleges that the Prudence Defendants breached their fiduciary duties under ERISA during the class period by:  "(1) continuing to offer Ambac Stock as an investment option for the Plan when it was imprudent to do so; and (2) maintaining the Plan's pre-existing heavy investment in Ambac Stock when it was no longer a prudent Plan investment."  (*Id.* ¶ 6).[7]  Additionally, the Amended Complaint alleges that the Compensation Committee of the Board and its members failed to monitor the other Plan fiduciaries.  (*Id.* ¶¶ 275-286).  The Amended Complaint seeks damages in the form of 1) "profits" lost by investing in Ambac Stock instead of other funds available, 2) "losses" incurred by investing in "Ambac Stock when the price was artificially inflated," 3) "losses" caused by the decline in

---

[7]       The original Complaint also alleged that Defendants breached their fiduciary duties by "failing to provide complete and accurate information to Plan Participants regarding the Company's financial condition and the risk of investing retirement assets in Ambac stock."  (*See* Dkt No. 1 at ¶ 6.)  Evidently abandoning any misrepresentation claim in its entirety, Plaintiff now solely relies on an artificial inflation theory with respect to the general market for Ambac Stock, a claim that has been resoundingly rejected by numerous courts, as explained below.

Ambac Stock as "the market began to learn the truth about Ambac's improper practices and financial problems," and 4) a constructive trust for amounts by which Plan fiduciaries benefited "as a result of their breaches."  (*Id.* ¶¶ 246-249).

Plaintiff's original Complaint (Dkt. No. 1) included Ambac and certain of its directors as Defendants and asserted a vague ERISA misrepresentation claim.  The Amended Complaint drops Ambac as a Defendant but adds seventy-three paragraphs and ten new defendants, substantially shortens the purported class period on the back end while adding twenty-five days to the front end, and does not add a single factual allegation supporting the claim that Ambac Stock was an imprudent investment as of October 1, 2006.

### D.     Economic Context of Plaintiff's Allegations

Plaintiff's allegations are rooted in the collapse in 2007 and 2008 in the markets for Residential Mortgage-Backed Securities ("RMBS") and other Collateralized Debt Obligations ("CDOs")[8] and the unprecedented defaults in these securities, some of which were guaranteed by Ambac.  As a result, Ambac suffered financial losses that far surpassed the expectations of investors, analysts, and Ambac's management.  As Ambac's losses on its insured securities mounted, Ambac's stock price fell, as did the prices of many other financial industry stocks. (Am. Comp. ¶ 223).

Virtually no one in government, academia, or the private sector foresaw the severity of the market collapse and ensuing credit crisis.  The prevailing wisdom of the day was that United States housing prices would not decrease on a nationwide basis.  The Economic Outlook: Hearing Before the J. Econ. Comm., U.S. Cong. (Apr. 27, 2006) (testimony of Ben S. Bernanke,

---

[8]     An RMBS is a debt security that receives cash inflows directly from underlying pools of residential mortgages.  Banks form RMBS by first purchasing mortgages from lenders or originating them directly, then compiling those mortgages into RMBS.  A CDO is a derivative security that receives cash inflows from asset-backed securities, including RMBS, or from other CDOs that are themselves funded by asset-backed securities.

Chairman, Fed. Reserve) (Ex. D) at 1-2 (testifying that significant uncertainties in housing market remain but "[a]t this point, the available data on the housing market, together with ongoing support for housing demand from factors such as strong job creation and still-low mortgage rates, suggest that this sector will most likely experience a gradual cooling rather than a sharp slowdown.").  Even after the initial mortgage market slowdown, in April 2007 the International Monetary Fund found that "[t]he deterioration in the credit quality of subprime mortgages has . . . been contained to certain portions of the subprime market [] and is not likely to pose a serious systemic threat."  *Global Financial Stability Report*, p. 6-7.  (Ex. E).  The report reached this conclusion based on "stress" tests conducted by investment banks "show[ing] that, even under scenarios of nationwide house price declines that are historically unprecedented, *most investors with exposure to subprime mortgages through securitized structures will not face losses*."  *Id.* at 7 (emphasis added).  Federal Reserve Chairman Ben S. Bernanke further assured the public in May 2007, that:  "The vast majority of mortgages, including even subprime mortgages, continue to perform well."[9]  In hindsight, these predictions turned out to be grossly inaccurate.

Nonetheless, as of October 1, 2006, the start of the alleged class period and the date when Plaintiff contends it became imprudent to hold Ambac Stock, Ambac was a viable, stable, going concern.  The Company's Form 10-K for the fiscal year 2006 reflected retained equity of over $6 billion, as its assets totaled $20,267,813,000 while its liabilities were $14,083,624,000.  (2006 10-K, p. 76, Ex. G).  None of this information is alleged to be "artificially inflated."  Ambac's stock was trading at more than $82.00 a share, its credit rating from the three key credit agencies was AA, and its principal operating subsidiary Ambac Assurance's credit rating was AAA, and

---

[9]       Speech to the Federal Reserve Bank of Chicago's 43rd Annual Conference on Bank Structure and Competition, Chicago, Illinois (May 17, 2007).  (Ex. F).

its independent auditors KPMG expressed no concerns regarding its financial statements.  (*Id.*; Ex. H (Document reflecting Stock Price).  Few if any economists were predicting a downturn in the economy, much less the collapse of the housing and credit markets.

Ambac Assurance's credit rating remained AAA until January 18, 2008, (over a year after the beginning of the class period) when Fitch downgraded its rating to AA; it was downgraded to AA by S&P and Moody's only in June 2008 (just a month before the end of the class period).  (Am. Comp. ¶ 126).  The rating agencies, like the rest of the financial markets, did not foresee the looming economic crisis.  As Alan Greenspan, former Chairman of the Federal Reserve, reported to the FCIC:  "[D]espite their decades of experience, *the rating agencies proved no more adept at anticipating the onset of crisis than the investment community at large*."  Alan Greenspan Testimony before the FCIC, p. 8 (Apr. 7, 2010) (emphasis added).  (Ex. I).

Moreover, of the fifteen analyst opinions regarding Ambac collected at Yahoo Finance from August 5, 2003 to August 8, 2008, only one opined that Ambac Stock was expected to under-perform in the future, and that was an August 8, 2008 downgrade issued by JP Morgan from "Neutral" to "Underweight," almost 22 months after the supposed date (October 1, 2006) that Ambac's stock became imprudent to hold.  (Yahoo Finance, Ex. J).[10]  Moreover, the five analyst opinions issued in the ten months after Ambac's stock allegedly became imprudent were all positive, including three "Upgrade[s]" which recommended that investors "Buy" or "Add" Ambac stock.  (*Id.*)  But perhaps the most definitive evidence of Ambac's solvency as a going concern even after the beginning of the class period is found in the successful $1.5 billion public offering of common stock and equity units in March 2008 (almost two years after the start of the class period and shortly before it ended).   (Press Release, Ex. P).

---

[10]     Such data is properly before the Court.  *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000) ("[T]he district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment.")

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555. Rather, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the mere possibility that defendant acted unlawfully is not enough. *Iqbal*, 129 S. Ct. at 1949. "Where a Complaint pleads facts that "are merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal citations and quotations omitted) (dismissing claims because conclusory allegations were insufficient to meet the pleading requirements of Rule 8); *In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 609 (N.D. Tex. 2008) (in ERISA stock drop case, noting that a "plaintiff must . . . plead specific facts, not mere conclusory allegations, to avoid dismissal").

## IV.   ARGUMENT

### A.   The Plan Mandates The Offering Of Ambac Stock, Therefore Neither The Plan Nor ERISA Gives The Fiduciaries Discretion To Eliminate The Stock Fund And Count I Fails To State A Claim.

"The 'threshold question' in 'every case charging breach of ERISA fiduciary duty' is whether the defendant 'was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to Amended Complaint.'" *In re Citigroup ERISA Litig.,* No. 07 Civ 9790, 2009 WL 2762708, at *12 (S.D.N.Y. Aug. 31, 2009), *appeal docketed*, No. 09-3804-cv (2d Cir. Sept. 9, 2009) ("*Citigroup*") (citation omitted). Simply stated, ERISA's fiduciary provisions do not apply to a plan sponsor's determination of the design (and terms) of a benefit

plan in the first instance, as this Court held in *Citigroup*.[11]  Because the Plan specifically requires

that Ambac Stock be offered as an investment option for Plan participants, any decision to alter

or maintain that Plan requirement would impact the Plan's design and thus not be subject to

ERISA's fiduciary requirements.  *See, e.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444

(1999) (activities related to the formation and design rather than management of the plans are

settlor functions).  *Accord Beck v. PACE Int'l Union*, 551 U.S. 96, 102, 110 (2007); *Lockheed

Corp. v. Spink*, 517 U.S. 882, 890 (1996); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73,

78 (1995).

      The facts of *Citigroup* are nearly identical to those presented here.  Plaintiffs in *Citigroup*

alleged that the defendants "knew, or should have known, that Citigroup stock was an imprudent

investment during the class period" because they "knew of the heavy losses which the Company

would inevitably sustain from [exposure to investments in] subprime loans."  *Citigroup*, 2009

WL 2762708, at *5 (quotations removed).  But the plans at issue in *Citigroup* stated that "the

Citigroup Common Stock Fund <u>shall be</u> permanently maintained as an Investment Fund under

the Plan."  *Id.* at *3 (underline added).  Judge Stein found that this language deprived the

defendants of any discretion to remove the stock and immunized them from suit for failing to do

so.  *Id.* at *15.

      The Fifth Circuit reached the same conclusion in *Kirschbaum*, holding that the defendant

fiduciaries did not have the discretionary authority under the plan to remove the stock because it

was "hard-wired" into the plan as an investment option and "[a]ltering . . . [this] provision[]

---

[11]     Section 3(21)(A) of ERISA provides that a person is a fiduciary with respect to a plan "to the extent" the
person: (i) exercises any discretionary authority or discretionary control respecting management of the plan or
exercises any authority or control respecting management or disposition of its assets; (ii) renders investment advice
for a fee or other compensation, direct or indirect, with respect to any moneys or other property of the plan, or has
any authority or responsibility to do so; or (iii) has discretionary authority or discretionary responsibility in the
administration of the plan.  29 U.S.C. §1002(21)(A).

would have required REI, acting in its capacity as a settlor, to amend the Plan."  526 F.3d at 250.

Following *Hughes Aircraft* and *Lockheed Corp.,* the Fifth Circuit concluded that decisions of a

plan sponsor to amend the plan are "[e]xcluded from fiduciary responsibilities."  *Id.* at 251.[12]

*See also Edgar*, 503 F.3d at 346.

Here, the Plan gives the Investment Committee authority to select funds for the

investment of Plan assets, "*provided, however*, that the Ambac Financial Group, Inc. Stock Fund

<u>shall be</u> an Investment Fund." (Plan, Definitions, p. 6) (italics in original) (underline added).

Thus, as in *Citigroup*, the Plan gives the fiduciaries no discretion to eliminate the Ambac Stock

Fund as an investment option, immunizing them from judicial review for failure to eliminate it [13]

The Amended Complaint attempts to plead around this dispositive Plan provision by

alleging that the Plan Administrative Committee's authority to interpret the Plan's provisions and

administer the Plan (Am. Comp. ¶¶ 164-165, 168) means that this Committee had authority to

overrule the express delegation of investment authority to the Investment Committee and the

Plan's command that Ambac Stock be offered.  But Plaintiffs cannot survive dismissal by

alleging an interpretation of the Plan that is not supported by the Plan's language.  Interpretation

of the Plan is a purely legal exercise and Plaintiff's allegations about what the Plan says must

yield to its plain language.  *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 667 (S.D.

Tex. 2004) ("the Court is not required to take at face value Plaintiff's vague allegations if they

are belied by the Plan themselves."); *In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d 1328,

---

[12]     The Fifth Circuit went on to find that documents extrinsic to the plan created ambiguity as to whether the fiduciaries actually had discretion over the employer securities.  *Kirschbaum*, 526 F.3d at 256.  No such ambiguity is alleged in this case.

[13]     The Amended Complaint also implies that Ambac Stock was not a required investment option during the entire class period.  (Am. Comp. ¶ 148) ("Throughout the Class Period, the Ambac Financial Group, Inc. Stock Fund was an investment option under the Plan.  It was not until January 1, 2008, however, that the fund was expressly defined.").  This is disingenuous, at best.  The Plan term specifying that the "Ambac Financial Group, Inc. Stock Fund <u>shall be</u> an Investment Fund" was part of the Plan as "Amended and Restated as of January 1, 2006." (Ex. A).

1338 (N.D. Okla. 2003) (dismissing claims against a defendant where the plan documents refuted plaintiffs' allegations of fiduciary status); *Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 228-229 (W.D.N.Y. 2002) (dismissing claims against alleged fiduciaries when plan documents confirm that they did not have fiduciary status).

As noted above, the Plan specifically requires that Ambac Stock be offered and delegates all remaining investment discretion to the Investment Committee.  Nothing in the delegation of general authority to the Administrative Committee to interpret and administer the Plan trumps these provisions.  Moreover, the Administrative Committee's authority to "interpret" the Plan's provisions would not enable it to either ignore the Plan's clear commands or usurp the authority of the Investment Committee.[14]

At bottom, the Prudence Defendants cannot be held liable under ERISA for failing to sell or cease offering the Ambac Stock because they had no discretion under the Plan to do so.  Thus, Count I should be dismissed in its entirety with prejudice.

### B.    The Plan Fiduciaries Were Not Required To Diversify Out Of Ambac Stock, Since The Plan Is Exempt From ERISA's Duty Of Diversification For Its Investment In Employer Securities.

ERISA's statutory language provides an independent basis for the dismissal of Count I. ERISA § 404(a)(1)(C) imposes upon fiduciaries of employee benefit plans the duty to diversify the investments to avoid the risk of large losses.  However, a statutory exception designed to

---

[14]    Substantially identical language appears in virtually all 401(k) plans because this delegation of discretion to interpret the plan is necessary to trigger the arbitrary and capricious standard of review in claims for benefits under ERISA Section 502(a)(1)(B).  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-13 (1989) (requiring that the plan/trust conferred discretion on the fiduciary to interpret its terms in order to warrant deferential review of the fiduciary's interpretation); *see also Conkright v. Frommert*, 130 S. Ct. 1640, 1644, 1646 (2010); *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)

promote investment in employer securities exempts the Plan, as an "eligible individual account plan" ("EIAP"), from ERISA's diversification requirement.[15]

   While the Second Circuit has not had the opportunity to squarely address the issue, the Eighth Circuit, as well as many district courts, have explicitly recognized that a breach of fiduciary duty claim cannot be based on an EIAP's failure to diversity:

> Congress intended to permit an ESOP to be used as a technique of corporate finance as well as a retirement benefit plan for employees. . . . ERISA duties are not breached by the mere fact that an ESOP fails to diversify, or that it engages in or contemplates employer-motivated transactions that would be prohibited self-dealing if done by a more conventional ERISA plan.

*Brown v. American Life Holdings, Inc.*, 190 F.3d 856, 860 (8th Cir. 1999) (citing *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992) (recognizing the special, congressionally-approved status of an ESOP, which "places employee retirement assets at much greater risk than does the typical diversified ERISA plan.")); *see, e.g., Citigroup*, 2009 WL 2762708, at *7 (ERISA's diversification requirement does not apply to ESOPs); *In re Bausch & Lomb, Inc. ERISA Litig.*, No. 06-CV-6297, 2008 WL 5234281, at *54 (W.D.N.Y. Dec. 12, 2008) (under § 404(a) (2) "prudence by diversification requirements are not violated by 'acquisition or holding of qualifying employer securities'").

   Several courts have dismissed claims that a fiduciary has a duty to sell employer securities and cease further purchases, holding they are simply claims that the fiduciary should have diversified the employer securities.  *Kirschbaum*, 526 F.3d at 248-249 (holding that a breach of fiduciary duty claim premised on the notion that a plan was too heavily weighted in company stock because the company "transformed" from a "traditional power utility company"

---

[15]    29 U.S.C. §1104(a)(2) states in relevant part, "in the case of an eligible individual account plan (as defined in § 407(d)(3)), the diversification requirement . . . and the prudence requirement (only to the extent it requires diversification) . . . *is not violated by the acquisition and holding of qualifying employer real property or qualifying employer securities*."  (emphasis added).

into a "speculative energy trading operation" were actually a claim that "clearly states a failure to diversify" and noting that – like here – plaintiff faulted defendants for "failing to diversify the assets of the Plan."); *Mellot v. Choicepoint, Inc.*, 561 F. Supp. 2d 1305, 1311-12 (N.D. Ga. 2007) (dismissing claim challenging investment in employer stock: "if Defendants ceased investing Plan assets in the Stock Fund and ChoicePoint stock, they would presumably invest those assets elsewhere, essentially diversifying the assets, something they were not required to do under ERISA."), *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1327 (N.D. Ga. 2006) (holding that imprudence claim "just amounts to another form of diversification argument" from which fiduciaries are exempt under § 404(a)(2)); *Pedraza v. Coca-Cola Co.,* 456 F. Supp. 2d 1262, 1274-75 (N.D. Ga. 2006) (same); *In re Beazer Homes USA, Inc. ERISA Litig.,* No. 07-0952, 2010 U.S. Dist. LEXIS 33476, at *19-20 (N.D. Ga. Apr. 2, 2010) (same).

The Prudence Defendants respectfully submit that this Court should follow the statutory mandate of ERISA §404(a) (2), and dismiss Plaintiff's Count I claim for what it is, a claim that the Prudence Defendants failed to diversify the Ambac Stock held by the Plan.

> **C.   Even If The Fiduciaries Could Be Deemed To Have Discretion Under The Plan And ERISA To Remove The Stock Fund From The Plan, Count I Fails To Plead Facts Establishing An Abuse Of Discretion By Any Defendant.**

Though the Court need not reach the issue, Plaintiff's Count I claim fails for the additional reason that the Amended Complaint can survive only if it pleads facts establishing that Defendants with responsibility for investments under the Plan abused their discretion by declining to ignore the Plan's command and not selling or ceasing to offer the Ambac Stock. Application of the abuse of discretion standard, also called the "presumption of prudence" by many courts, compels dismissal of Count I.[16]

---

[16]      In *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995), the Sixth Circuit adopted *Moench* and interpreted it to require an abuse of discretion.

1.     **The Abuse Of Discretion Standard Of Review Has Been Widely Adopted And Applied By The Courts To Dismiss Inadequately Pled Claims That Fiduciaries Breached Their ERISA Duty Of Prudence By Failing To Sell Employer Securities.**

EIAPs that invest in employer securities are inherently risky because, by definition, all or a substantial portion of these plans' assets are invested in a single security. Therefore the courts have recognized, based on ERISA § 404(a)(2) (the diversification exemption), that even those fiduciaries with discretion to remove employer stock can be held liable for failing to do so only under dramatically limited circumstances. This legal standard, often called the "prudence presumption," has its origins in *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), where the Third Circuit held that a fiduciary of an ESOP (a specific type of EIAP) is entitled to "a presumption that it acted consistently with ERISA" when it decides to invest plan assets in the sponsoring company's stock and will not be held liable absent an abuse of discretion. *Moench*, 62 F.3d at 571.[17] The Third, Fifth, Sixth, and (just recently) Ninth Circuits have embraced the presumption. *See id.; Kuper,* 66 F.3d at 1459 (adopting abuse of discretion standard); *Kirschbaum*, 526 F.3d at 256 (the presumption is a "substantial shield" to allegations of imprudence and "may only be rebutted if unforeseen circumstances would defeat or substantially impair the accomplishment of the trust's purposes."); *Quan,* 2010 WL 3784702 at *7-8 (holding that the company's viability as a going concern must be threatened or be on the brink of collapse to rebut the *Moench* presumption, and noting that "[i]t will not be enough for plaintiffs to prove

---

[17]     Recent decisions have recognized that the term "presumption" is actually a misnomer since it refers to the *legal* abuse of discretion standard of review applied by the courts to a fiduciary's conduct:

> [I]t is somewhat misleading to say, in the context of a Rule 12(b)(6) motion, that the Court is applying a "presumption" or that a Plaintiff must plead sufficient facts to "overcome" it. A Plaintiff who has failed to plead facts that, if proven, would establish that an [ESOP] should not have invested in any employer stock has failed to state a claim, not failed to overcome a presumption.

*Wright v. Medtronic, Inc.*, No. 09-cv-0443 (PJS/AJB), 2010 WL 1027808, *6 (D. Minn. Mar. 17, 2010). The presumption of prudence "is not a mere evidentiary standard, but instead a substantive rule of law that can be applied at the motion-to-dismiss stage." *In re Ford Motor Co. ERISA Litig.*, 590 F. Supp. 2d 883, 893 n.1 (E.D. Mich. 2008). *See also Avon*, 2009 WL 848083, at *10.

that the company's stock was not a 'prudent' investment or that defendants ignored a decline in stock price.").[18]

    In this Circuit, courts have regularly applied the abuse-of-discretion standard at the pleading stage and dismissed claims of fiduciary breach that do not meet that threshold. *Citigroup*, 2009 WL 2762708, at *16.  In general, a claim is inadequate if it fails to allege facts indicating that the employer faced imminent collapse at the time it became imprudent to hold employer securities.[19]  *See, e.g., In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *8 (dismissing "stock drop" claim where stock price declined 85% during class period because plaintiff failed to plead an imminent corporate collapse or other "dire" situation that caused stock to become imprudent offering and noting that the downward trajectory of defendant's stock price was similar to its competitors in the industry); *In re Bank of America Corp. Secs., Derivative & ERISA Litig.*, No. 09 MD 2058 (PKC), 2010 WL 3448197, at *21 (S.D.N.Y. Aug. 27, 2010) ("Plaintiffs have not pleaded facts sufficient to establish that Plan fiduciaries should have known that BofA was on the brink of an "imminent collapse" such that a reasonable fiduciary could not have believed that continued investment in BofA stock was no longer in accordance with the settlor's intent."); *Herrera v. Wyeth*, 2010 WL 1028163, at *7; *Gearren*, 690 F. Supp. 2d at 271 (dismissing "stock-drop" claim when plaintiffs failed to plead "catastrophic decline necessary to

---

[18]     *See also Pugh v. Tribune Co.*, 521 F.3d 686, 701 (7th Cir. 2008) (affirming dismissal of ERISA claims as to employer stock and citing *Moench* in determining that allegations were insufficient to "show that the ERISA fiduciary could not have reasonably believed that the plan's drafters would have intended under the circumstances that he continue to comply with the ESOP's direction that he invest exclusively in employer securities.").

[19]     Courts have also described the abuse of discretion standard as requiring the court to treat the plan as if it held *one share* of employer stock and to determine whether the complaint pleads facts sufficient to trigger a duty to sell that *single* share.  *See, e.g., Morrison v. Moneygram Int'l,Inc.*, 607 F. Supp. 2d 1033, 1053 (D. Minn. Mar. 25, 2009) ("an abuse of discretion begins . . . at the point at which company stock becomes so risky that no prudent fiduciary, reasonably aware of the needs and risk tolerance of the Plan's beneficiaries, would invest *any* Plan assets in it, regardless of what other stocks were also in that Plan's portfolio"); *Medtronic*, 2010 WL 1027808, at *6 (same).  Indeed, a fiduciary with responsibility for a plan holding millions in assets would only be compelled by ERISA's prudence requirement to sell a single share when the fiduciary had clear notice that single share was about to become worthless.

rebut the presumption [of prudence]"); *In re Lehman Bros. Secs. & ERISA Litig.*, 683 F. Supp. 2d 294, 301 (S.D.N.Y. 2010) (dismissing for failure to plead "the fiduciary's knowledge at a pertinent time of an imminent corporate collapse or other 'dire situation' sufficient to compel an ESOP sell-off") (internal quotations and citations omitted); *Fisher v. JPMorgan Chase & Co.*, No. 03 Civ. 3252 (SHS), 2010 WL 1257345, at *8 (S.D.N.Y. Mar. 31, 2010) (dismissing for failure to plead "'the type of dire situation' that would have caused the plan fiduciary defendants to believe continuing to offer the Stock Fund was no longer 'keeping with the settlor's expectations of how a prudent trustee would operate'") (internal citations omitted).[20]

Indeed, in the wake of the sub-prime mortgage crisis, courts in this district have dismissed claims against financial institutions facing the same allegations as here--that defendants should have seen the collapse coming -- but that fail to allege the collapse was imminent at the start of, or for that matter, during the class period. *E.g., Citigroup*, 2009 WL 2762708, at *18. In *In re Lehman Bros.*, the plaintiffs alleged that Lehman Brothers held large amounts of risky real estate loans and mortgages and had "overvalued these assets and that its financial condition therefore was weaker than disclosed," ultimately causing the bank's demise and bankruptcy. 683 F. Supp. 2d at 297. This court held that, to state a claim, plaintiffs must plead "the fiduciary's knowledge at a pertinent time of 'an imminent corporate collapse or other dire situation sufficient to compel an ESOP sell off.'" *Id.* at 301 (citing *Avon*, 2009 WL 848083, at *11). The court found that the plaintiffs' complaint "fails to allege facts that permit a determination of when Lehman's financial condition reached that point. . . .  Instead, the

---

[20]     *See also Avon*, 2009 WL 848083, at *10 (dismissing for failure to "present a basis for inferring that the company was facing such a ruinous financial situation that maintaining the Plan's interest in its common stock was self-evidentially financially destructive to the Plan."); *In re Bausch & Lomb, Inc. ERISA Litig.*, 2008 WL 5234281, at *54 (dismissing for failure to allege the company "was in the type of jeopardy that would have caused the Plan drafters to discontinue participant discretion to invest in and out of the B & L Stock Fund"); *In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2010 WL 3081359, at *13-14 (W.D.N.C. Aug. 6, 2010) (holding that a plaintiff must plead "facts giving rise to a reasonable belief that the viability of the company itself is threatened").

[complaint] alleges, in conclusory terms only, that there were 'clear warning signs' of collapse and that defendants 'knew or should have known' about Lehman's true financial state throughout the class period." *Id.* at 303; *see also Bank of America Corp.*, 2010 WL 3448197, at *20-21 (holding that plaintiff's allegations must be viewed in the context of the global financial crisis and "[a]lthough a decline in stock value of over 80% may have caused reason for concern about the level of risk involved with continued investment in BofA common stock, it cannot be said that the Company was in 'imminent danger of collapse.'"); *In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *9 ("despite the substantial decline in share price, Plaintiffs have not alleged 'an imminent corporate collapse' or other 'dire situation' necessary to overcome the *Moench* presumption."). Many district courts outside this circuit have followed suit, applying the abuse of discretion standard and dismissing similar claims on Rule 12 motions where the plaintiff failed to allege the employer faced imminent collapse.[21]

Because the Plan here required that Ambac Stock be offered, the Plan's fiduciaries are entitled to even greater deference under *Moench* in their decision not to divest the Plan of this offering as of October 1, 2006. *See Quan v. Computer Sciences Corp.*, Nos. 09-56190, 09-56248, 2010 WL 3784702, at *9 (9th Cir. Sept. 30, 2010) ("A guiding principle, however, is that the burden to rebut the presumption varies directly with the strength of the plan's requirement that fiduciaries invest in employer stock."). This Court should follow these well-reasoned

---

[21]       *See* footnote 1, *supra*; *e.g., Johnson v. Radian Group, Inc.*, No. 08-2007, 2009 WL 2137241, at *16 (E.D. Pa. July 16, 2009) (granting motion to dismiss stock drop claims as the allegations did not show "ongoing viability as a company was implicated"); *Benitez v. Humana, Inc.*, No. 3:08cv-211-H, 2009 WL 3166651, at *7 (W.D. Ky. Sept. 30, 2009) ("This standard of 'presumed reasonableness' and its application in the above circumstances seem to set an appropriately high barrier for moving forward in cases of this kind"); *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681 at 694 (W.D. Tex. 2008) (dismissing claims where "there [was] no indication Dell's survival was ever threatened nor that Dell's stock was in danger of becoming worthless"); *Radioshack* 547 F. Supp. 2d at 615-16 (dismissing ERISA claim where dire circumstances were not alleged); *In re Coca-Cola Enterp. Inc., ERISA Litig.*, No. 06-953, 2007 WL 1810211, at *10 (N.D. Ga. June 20, 2007) ("The drastic action Plaintiff advocates would only be appropriate in the case of a company on the brink of collapse"); *Smith v. Delta Airlines*, 422 F. Supp. 2d 1310, 1331 (N.D. Ga. 2006) ("impending collapse").

decisions and review the sufficiency of the Amended Complaint under a heightened abuse of discretion standard.

> ### 2. The Amended Complaint Fails To Allege Facts Establishing That Any Defendant Abused His Or Her Discretion And Therefore Fails To Overcome The "Presumption Of Prudence."

The Amended Complaint alleges that on October 1, 2006, the Ambac Stock became an imprudent Plan investment, requiring the fiduciaries to sell or cease offering the stock.  (Am. Comp. ¶¶ 190, 235).  But while the Amended Complaint repeatedly trumpets the *subsequent* reductions in Ambac's share price, it makes no allegations from which the Court could infer that Ambac faced "imminent collapse" or other dire financial circumstances on October 1, 2006.[22] Instead, Plaintiff essentially asks the Court to infer, with the aid of 20/20 hindsight and based solely on events occurring *after* that date, that it was imprudent to hold the stock after October 1, 2006.  However, ERISA's prudence standard is measured by "the circumstances then prevailing" at the time of the allegedly imprudent act, and not "'whether [the] investment[] [ultimately] succeeded or failed.'"  *Kirschbaum*, 526 F.3d at 253 (citing *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983)); 29 USC §1104(a) (1) (B).  *See also Johnson*, 2009 WL 2137241, at *13 (collecting cases); *Keach v. U.S. Trust Co.*, 419 F.3d 626, 638 (7th Cir. 2005) ("ERISA's fiduciary duty of care 'requires prudence, not prescience'").  Accordingly, the Court must disregard events alleged to have occurred *after* the start of the class period (themselves inadequate to establish an abuse of discretion) in determining the sufficiency of Plaintiff's claim that the Ambac Stock should have been stripped from the Plan *on* October 1, 2006.

---

[22]    *See In re Computer Sciences Corp ERISA Litig.*, 635 F. Supp. 2d 1128, 1135 (C.D. Cal. 2009) (summary judgment) (dismissing claims that stock became imprudent "no later than the first day of the class period" because plaintiffs "failed to sufficiently explain why Defendants should have known of the alleged lack of controls at this time"), *aff'd*, Nos. 09-56190, 09-56248, 2010 WL 3784702 (9th Cir. Sept. 30, 2010).

The allegations of events occurring before the beginning of the class period simply attack Ambac's business practices by alleging:

> Throughout 2006, the Company's exposure and reliance on revenues from structured finance (i.e., RMBSs and CDOs tied to RMBSs) grew while the less risky public finance business accounted for a smaller and smaller percentage of the Company's revenues.

(Am. Comp. ¶ 188).  However, the Amended Complaint does not allege that these business practices were misrepresented to the investing public prior to October 1, 2006, and investors aware of Ambac's business practices prior to October 1, 2006 were perfectly content to assume these alleged risks by purchasing Ambac Stock.  (*E.g.,* Ex. L, 2001 10-K).  Ambac's public disclosures demonstrated that structured finance comprised an increasingly larger percentage of its insured portfolio beginning in the 1990s and continuing until the class period.  For example, while in 1993, the non-structured public finance Plaintiff references was 98% of new business, it was approximately 65% in 1997, 39% in 2001, and 55% in 2006 (Ex. G, 2006 10-K, at 14; Ex. L, 2001 10-K, at 12; Ex. M, 1996 10-K, at 13).  Nothing in the Amended Complaint suggests that increased activity in the structured finance market meant that Ambac was facing imminent collapse.  Moreover, Ambac specifically disclosed that from 2004 to 2006, pooled debt obligations (which include the CDOs cited in "Plaintiff's Complaint") grew from 6% of Ambac's new structured finance business to 33%.  (Ex. G, 2006 10-K, at 46; Ex. N, 2005 10-K, at 45).  As of October 1, 2006, Ambac Assurance had an AAA credit rating from all three rating agencies, which were responsible for evaluating the risk of Ambac's products, and Ambac had equity reserves of over $6 billion.  (Ex. G, 2006 10-K).  In short, Ambac Assurance had been insuring CDOs and RMBS for many years with full disclosure to the market, and the market reacted by *bidding up* the price of the stock.  (Ex. L, 2001 10-K, at 4); Ex. O (Chart of Stock Price 2002-2006)).  Market analysts, moreover, widely viewed Ambac stock favorably before

24

and after the stock allegedly became "imprudent."  Indeed, only one of the fifteen analyst opinions issued from August 5, 2003 to August 8, 2008 opined that investors should do anything other than "buy" or "hold" Ambac stock, and in March 2008, Ambac successfully closed a public offering for $1.5 billion of new stock and equity offerings.  (Exs. J, P).[23]

At bottom, the Amended Complaint simply alleges that Ambac's business practices were "risky" and that should have prompted the Defendants to sell the stock and remove it as a Plan option by October 1, 2006.  Just recently this Court dismissed substantially identical claims under similar circumstances, where the plaintiffs alleged that Bank of America's "potential risk of adding Countrywide's 'toxic [residential mortgage] assets'" and "subsequent Merrill acquisition" caused an 83% decline in stock price.  *Bank of America Corp.*, 2010 WL 3448197, at *20-21.  The Court held that "this ERISA action does not turn on whether BofA's decisions to acquire Countrywide and Merrill were good business judgments.  Under ERISA, the question is whether the fiduciaries' decision to continue offering the Common Stock Fund as an investment option and to continue the Plans' investment in BofA stock, in light of plan language requiring that the Company Stock Option be available to Plan Participants as an optional investment

---

[23]     *See e.g.*, *Kuper*, 66 F.3d at 1460 (holding that it was prudent to hold company stock, in part, because several investment advisors recommended holding the stock during the same period): *In re Huntington Bancshares, Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 851 (S.D. Ohio 2009) (granting Rule 12(b)(6) motion to dismiss on claim alleging failure to divest employer stock fund where "the plan fiduciaries of large public pension funds . . . continued to invest in Huntington stock, and indeed increased their investments, during the class period."); *Shirk v. Fifth Third Bancorp.*, No. 05-cv-049, 2009 WL 692124, at ** 13-14 (S.D. Ohio Jan. 29, 2009) (defendants did not breach fiduciary duties by continuing to offer company stock where the defendants' expert opinion that company stock was never an imprudent investment was "consistent with the other ERISA fiduciaries who were investing in [company stock] and with analysts who were evaluating [company stock].  That is (1): institutional investors increased their holdings of Fifth Third stock during the Class Period; and (2) 50% of equity research analyst reports during the Class Period gave favorable outlooks . . ."); *Nelson v. IPALCO Enters., Inc.*, 480 F. Supp. 2d 1061, 1085, 1099-1100 (S.D. Ind. 2007) (holding defendants did not violate their ERISA fiduciary duty by continuing to offer company stock as an investment option and relying, in part, on defendants' expert testimony that company stock was a prudent investment where, among other things, "[h]e considered the fact that more than 70 percent of [company] stock was held by sophisticated institutional investors, including one mutual fund family"); *Landgraff v. Columbia/HCA Healthcare Corp. of Am.*, No. 3-98-0090, 2000 WL 33726564, at *15-16 (M.D. Tenn. May 24, 2000) (concluding that an "inquiry into the fundamentals of the company would not 'have revealed to a reasonable [ERISA] fiduciary that the [company stock] was improvident,'" relying, in part, on bank's conclusion that company stock was a prudent investment based on the facts that "a large number of institutional investors held [company] stock and that 'the majority of analysts are positive in their outlook for the stock").

measure, was a breach of their fiduciary duties." *Id.* at * 20; *see also In re Constellation Energy Group, Inc. ERISA Litig.*, No. CCB-08-2662, 2010 WL 3221821, at *10 (D. Md. Aug. 13, 2010) ("A company's decision to adopt a riskier business model is not in itself a fiduciary decision governed by ERISA, nor does that decision automatically trigger a duty to divest.").

Having failed to plead facts establishing that Ambac faced imminent collapse or dire circumstances on October 1, 2006, Plaintiffs cannot satisfy their pleading burden by simply reciting that Ambac faced "impending collapse." (Am. Comp. ¶ 193); *see Iqbal*, 129 S. Ct. 1949 (allegations must be supported by "factual content"); *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (court must dismiss if allegations "merely parrot the statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims,"); *In re Sprint ERISA Litig.,* 388 F. Supp. 2d 1207 (D. Kan. 2004) (rejecting co-fiduciary claims on a motion to dismiss where allegations merely parroted the legal standard without citing any alleged factual support). Indeed, the only paragraph even approaching Plaintiff's pleading burden alleges that Ambac warned in "late 2009" of possibly needing bankruptcy protection, over a year after the end of the alleged class period, not to mention the 2006 start of the class period, when Plaintiff alleges the Ambac Stock became imprudent to hold. (Am. Compl. ¶¶ 220-22).

Nor can Plaintiff satisfy his pleading burden by alleging a decline in Ambac's stock price (again, many months after the Amended Complaint alleges it became imprudent to hold the stock). (*Id.* ¶ 9). *See Kuper*, 66 F.3d at 1460 (company-wide problems and 80% drop in stock price insufficient); *Wright*, 360 F.3d at 1096-99 (ill-advised merger and decline in stock price of nearly 75%); *Nelson*, 480 F. Supp. 2d at 064, 1099-1103 (decline in stock price of 90%); *Ward v. Avaya*, 299 F. App'x. 196, 200-201 (3d Cir. 2008) (stock price declined approximately 95%); *In*

*re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *8 (decline in stock price of 85%); *Crowley*, 234 F. Supp. 2d  at 227, 230  (80% decline in value).

Accordingly, should the Court decide to address this issue, Plaintiff's prudence claim (Count I) should be dismissed because Plaintiff's allegations do not (and cannot) establish that any Prudence Defendant abused his or her discretion by failing to sell the Ambac Stock and/or remove it as an investment option on or before October 1, 2006.

> **3.    The Alleged "Artificial Inflation" Does Not Itself Trigger a Duty To Sell the Ambac Stock, Moreover Doing So Would Violate The Securities Laws.**

Absent facts necessary to establish an abuse of discretion, Plaintiff is left with his allegation that Ambac Stock was "artificially inflated" and that this fact alone required the Prudence Defendants to sell the stock, remove it as an option, and disclose the alleged artificial inflation.  Two circuit courts have recently held that the existence of artificial inflation in an employer security does not trigger a fiduciary duty to sell.  In *Kirschbaum*, the Fifth Circuit stated that there is nothing unique about "artificial inflation" that requires a fiduciary to act:

> [T]here is no principled difference between how a fiduciary should respond to "artificial inflation" of a stock price as opposed to other sorts of negative insider information. Consequently, the standard of judicial review applicable to such decisions should not generally turn on pleading artifices.  The *Moench* presumption logically applies to *any* allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock.

526 F.3d at 254 (emphasis added).  As demonstrated above, Plaintiff's principal contention -- that Ambac embarked on a more risky path when it decided to enter the market for insurance on CDOs -- does not establish an abuse of discretion by Plan fiduciaries for failing to dump the Ambac Stock.  Nor does adding an allegation that this business "risk" was not fully disclosed to the public since the alleged failure to disclose adds no risk of "imminent collapse" of a "dire" financial situation.  Moreover, the action Plaintiff demands of the fiduciaries—selling the Ambac

stock in the Plan—runs afoul of the securities laws, a point not lost on Judge Posner in

*Harzewski v. Guidant Corp*:

> It probably would have been unlawful, moreover, for Guidant to sell the Guidant stock held by the pension plan on the basis of inside knowledge of the company's problems.  If so, there are no damages, and indeed no breach of fiduciary duty; for the fiduciary's duty of loyalty does not extend to violating the law.

489 F.3d 799, 808 (7th Cir. 2007).  *See also Kirschbaum*, 526 F.3d at 256 ("fiduciaries *may not trade for the benefit of plan participants* based on material information to which the general shareholding public has been denied access.") (emphasis added).[24]  The thrust of these decisions is that artificial inflation does not trigger a duty to sell the allegedly inflated employer securities under ERISA and, in any event, selling artificially inflated stock would be illegal.  *See also Edgar*, 503 F.3d at 350; *In re McKesson HBOC, Inc. ERISA Litig.,* No. C00-20030 RMW, 2002 WL 31431588, at *6-7 (N.D. Cal. Sept. 30, 2002) ("Fiduciaries are not obligated to violate the securities laws in order to satisfy their fiduciary duties.") (citing Restatement (Second) Trusts § 166, cmt. a); 29 U.S.C. §1144(d) ("Nothing in [ERISA] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States. . . .").

It is no answer to say – as Plaintiff attempts to in his Amended Complaint – that the Plan fiduciaries should have disclosed the "artificial inflation" of the stock price and sold the stock to avoid subsequent losses.  Under the "efficient market hypothesis," public disclosure of the allegedly concealed information would have caused an immediate correction to the stock price, and the Plan and its participants could not have avoided the price drop, precluding any claim for damages.  *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 200 (2d Cir. 2008) (quoting *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988)); *Edgar*, 503 F.3d at

---

[24]      *See also Wright*, 360 F.3d at 1098 n.4 ("The *Moench* standard seems problematic to the extent that it inadvertently encourages corporate officers to utilize inside information for the exclusive benefit of the corporation and its employees, *Lingis v. Motorola, Inc.,* 649 F. Supp. 2d 861, 882 (N.D. Ill. 2009) (same).

350 ("had the . . . defendants 'publicly released any adverse information '. . . 'such disclosure would have resulted in a swift market adjustment.'  Therefore . . . the Plans would have sustained the same losses they incurred when the Company publicly announced the quarterly results in April 2005") (citation omitted); *Avon*, 2009 WL 848083, at *15 ("if the plan fiduciary disclosed any arguably material adverse information to the participants, precipitating a rash of selling, that would likely cause a sharp decline in the share price, thus damaging the Plan").

Similarly, the Plan fiduciaries could not have avoided the alleged losses because a cessation of further purchases of Ambac Stock – in violation of the Plan's clear terms – would have required the same disclosure with the same effect.  *See* 29 U.S.C. § 1104(a)(1)(D) (requiring fiduciaries to follow plan's terms); Regulation FD, 17 C.F.R. § 243.100 (requiring simultaneous public disclosure).  In sum, allegations of artificial inflation in the Ambac Stock do not, as a matter of law, establish an abuse of discretion by any Prudence Defendant.

**D.**      **To The Extent The Amended Complaint Alleges That The Defendants Breached Their Fiduciary Duty Of Prudence By Not Disclosing Information Concerning Ambac's Financial Status, That Claim Is Not Cognizable Under ERISA.**

While retaining few of the original Complaint's allegations suggesting a fiduciary misrepresentation claim under ERISA (Comp., Dkt. No. 1, ¶¶ 112, 141-143, 149, 188-189), the Amended Complaint nevertheless includes vague references to allegedly misleading disclosures, claiming that Ambac had far "greater exposure to anticipated losses" than it had disclosed, "understat[ed] its liability and exposure and fail[ed] to disclose the negative trends that the Company was experiencing," and "concealed, distorted, and misrepresented its true financial condition from the general public."  (Am. Comp. ¶¶ 6, 194, 231).[25]  All of these alleged

---

[25]      The Amended Complaint also does not assert an independent claim that Defendants committed fiduciary breaches under ERISA in the form of affirmative misrepresentations.  To the extent Plaintiff is alleging that Defendants are liable under ERISA for any of the public statements noted in the Amended Complaint, this claim

misstatements were allegedly made by the Company, not any Defendant in this action.  The

Supreme Court has held that "lying is inconsistent with the duty of loyalty owed by all

fiduciaries" but carefully limited the prohibition against "lying" to communications made by an

ERISA fiduciary acting in its fiduciary capacity.  *Varity Corp. v. Howe*, 516 U.S. 489, 498, 506

(1996) (internal citation omitted).  The Court has not imposed any affirmative requirement on

fiduciaries to disclose information not required to be disclosed under ERISA's comprehensive

statutory scheme and several courts have rejected the notion that ERISA fiduciaries have a duty

to disclose employer financial information.  *Edgar*, 503 F.3d at 350 (in affirming dismissal of

plaintiffs' complaint, court held that defendants were not required to inform participants of

adverse corporate developments and that ERISA fiduciaries are not required to "'give investment

advice' or 'to opine on' the stock's condition.") (internal citations omitted); *Avon*, 2009 WL

848083, at *15 (rejecting plaintiffs' "failure-to-warn" theory in stock-drop claim:  "In substance,

this is a claim premised on an assumed obligation of plan fiduciaries to disclose corporate inside

information.  This theory fails as a matter of law."); *In re Citigroup*, 2009 WL 2762708, at *21

(dismissing failure-to-disclose claim in stock-drop lawsuit because there is "no ERISA provision

requiring that fiduciaries disclose information bearing on an employer's financial condition;"

specifically in the context of "information about the financial status of plan investments.").[26]

---

similarly fails.  *E.g., Gearren*, 690 F. Supp. 2d at 272-273 (SEC filings, even if incorporated into plan documents, are not actionable under ERISA when their content is not "intentionally connect[ed]…to statements about plan benefits."); *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *7 ("[S]tatements concerning a company's financial condition become subject to ERISA fiduciary duties only if they are made in an ERISA fiduciary capacity, which means that the statements are made by the plan administrator and are intentionally connected to statements regarding a plan's benefits.").

[26]    *See also Gearren*, 690 F. Supp. 2d at 271 (in dismissing "stock-drop" complaint, holding that omission claim failed to state a claim because "Defendants have no affirmative duty under ERISA to disclose information about the company's financial condition to plan participants.") *In re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA, 2005 WL 1431506, at *7 (N.D. Cal. March 31, 2005) (ERISA's disclosure requirement "is limited to the disclosure of information about the plan, plan benefits or plan administration); *Hill v. BellSouth Corp.*, 313 F. Supp. 3d 1361, 1369 (N.D. Ga. 2004) ("[T]he mere fact that an ERISA plan consists of, at least in part, in employer stock does not mean that that ERISA fiduciary duty to disclose plan-related information to beneficiaries is transformed into a general duty to disclose the financial details of the business.").

Nor do ERISA's disclosure requirements overlap or supersede the disclosure requirements of the securities laws.  29 U.S.C. §1144(d).  Therefore, to the extent the Amended Complaint can be read to assert claims of breach of fiduciary duty for failure to disclose information about Ambac, all such claims must be dismissed.

### E. Even Assuming Discretion To Remove Ambac Stock From The Plan Existed, Only The Defendants Who Were Members of the Investment Committee During the Class Period Are Proper Individual Defendants Under Count I.

Fiduciary status is not an "all-or-nothing concept," and Plaintiff must allege that each Defendant exercised discretionary authority "with respect to the particular activity at issue" in order to state a valid claim for breach of fiduciary duty.  *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005) (internal citation omitted).  Here, Plaintiff alleges that the Administrative Committee had authority and control over Plan investments (Am. Comp. ¶¶ 69-70), but this is directly contradicted by the Plan's terms.  Therefore, he cannot meet his burden of properly pleading fiduciary status by each of the Administrative Committee Defendants.

"[A] person is a fiduciary only 'to the extent' he 'has or exercises specified authority, discretion or control over a plan or its assets.'  *Kirschbaum*, 526 F.3d at 251 (citing 29 U.S.C. § 1002 (21) (A)); *Lanfear v. Home Depot, Inc.*, Case No. 1:07-CV-197-ODE, 2010 WL 2427413, at *9 (N.D. Ga. June 7, 2010) (dismissing similar allegations where Administrative Committee had no responsibility for plan investments).  Thus, "[a]n ERISA fiduciary for one purpose is not necessarily a fiduciary for other purposes."  *Kirschbaum,* 526 F.3d at 251. This Court has regularly dismissed prudence claims against defendants where the complaint failed to allege sufficient facts establishing that they had discretion over the decision to offer employer stock as an investment.  *Fisher v. JP Morgan Chase & Co.*, No. 03 Civ. 3252 (SHS), 2010 WL 1257345, at *5 (S.D.N.Y. March 31, 2010); *Crowley*, 234 F. Supp. 2d at 229 (dismissing claim that "defendants imprudently continued to offer Participants the ability to invest their plan funds in

[company] stock" because "the Board did not control investment options;" the "only power the Board had under the Plan was to appoint, retain or remove members of the Committee.").[27]

The Plan, which is incorporated into the Amended Complaint by Plaintiff's allegations, clearly and specifically states that the Investment Committee is solely responsible for investment of the Plan's assets (subject to the Plan's terms) and assigns the Plan Administrative Committee finite responsibilities, none of which confers discretion to remove Ambac Stock from the Plan. Plan documents attached to the complaint trump bare, conclusory allegations to the contrary. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("consider[ing] the plan documents along with the complaint, because they were incorporated through reference . . . and they are central to plaintiff's claims."); *Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union*, 221 F.2d 644, 647 (6th Cir. 1995) ("If inconsistent with the allegations of the complaint, the exhibit controls."); *Reliant*, 336 F. Supp. at 667 ("the Court is not required to take at face value Plaintiff's vague allegations if they are belied by the Plan themselves.")  In sum, while the Defendants submit that *no* fiduciary had discretion under the Plan to remove the Ambac stock, it is clear that the only fiduciary with *any* discretionary control over Plan investments was the Investment Committee.  Thus, the Plan's clear terms refute the Amended Complaint's conclusion that the Administrative Committee is a "de facto" fiduciary for investment purposes and the Count I claims against the Administrative Committee and its members must be dismissed.

---

[27]     If Plaintiffs are contending these individuals are "functional" fiduciaries, then they have to plead factual allegations establishing their exercise of discretionary control over Plan assets.  The Amended Complaint contains no such allegations.  *See Lehman Bros.*, 683 F. Supp 2d at 300 (plaintiffs failed to allege sufficient factual basis to conclude that director defendants were functional fiduciaries); *Harris v. Amgen, Inc.*, Case No. Cv 07-5442, 2010 WL 744123, at *6 (C.D. Cal. March 2, 2010) (same).

**F.**   **Plaintiff's Failure To Monitor (Count II) Claim Fails As A Matter Of Law Because It Is Derivative And Conclusory.**

Plaintiff's failure to monitor (Count II) claim is derivative of the breach alleged in Count I and must be dismissed with Count I,[28] but its conclusory allegations against the Compensation Committee and its members also fail to state a claim.

Count II formulaically alleges that the Compensation Committee (and certain of its members) failed to ensure that the Plan Investment Committee and the Plan Administrative Committee "had access to knowledge about business problems which made Ambac stock an imprudent investment."  (Am. Comp. ¶ 281).  However this allegation is directly contradicted by the equally formulaic allegations that the members of the Investment and Administrative Committees had "confidential" information that gave rise to a duty to sell the Ambac stock *while the Compensation Committee members had no such information.*  (*Compare, e.g.,* ¶ 46 relating to alleged information known by a Plan Investment Committee member, *with* ¶¶ 281, 283 relating to alleged and unspecified "confidential" information allegedly known by the Compensation Committee).  According to the Complaint, there is nothing the Compensation Committee members could have "shared" with the members of the other Committees that they didn't already know, and then some.  Stated differently, Plaintiff "do[es] not identify any information that was withheld from any Plan fiduciaries, much less by whom."  *Avon,* 2009 WL 848083, at *10, 16.  Thus, Plaintiff's failure-to-monitor claim fails to meet the pleading standards

---

[28]        *See, e.g., Johnson*, 2009 WL 2137241, at *24 (where court held that the complaint did not adequately state a claim for breach of fiduciary duty in imprudence or failure to disclose, dismissing duty to monitor claim because these were "derivative" claims that "necessarily depend upon the existence of breaches of fiduciary duty"); *In re Bausch*, 2008 WL 5234281, at *10 ("Because the plaintiffs' Complaint fails to state a claim for breach of fiduciary duty by any of the Plan's fiduciaries, the plaintiffs' claims for failing to adequately monitor these fiduciaries must also be dismissed."); *In re RadioShack Corp.*, 547 F. Supp. 2d at 616 (dismissing failure to monitor claim on the basis that such claim was "derivative" of dismissed prudence and misrepresentation claims).

of Rule 8.  *See Iqbal*, 129 S. Ct. 1949 (allegations unsupported by "factual content" fail to satisfy

Rule 8).

Second, the Amended Complaint tasks the Compensation Committee with a fiduciary

role not assigned by the Plan, because responsibility for Plan investments was the exclusive

province of the Plan Investment Committee — not the Compensation Committee.  To hold the

Compensation Committee liable for the actions of Plan fiduciaries "would make any supervisor

of an ERISA fiduciary also an ERISA fiduciary."  *In re WorldCom ERISA Litig.*, 263 F. Supp. 2d

745, 760-61 (S.D.N.Y. 2003).

Third, while the Amended Complaint alleges that the Compensation Committee had the

authority to appoint and evaluate fiduciaries, including the Plan Investment Committee (Am.

Comp. ¶ 109), liability cannot be imposed where the appointing fiduciaries lacked notice of

"possible misadventure by their appointees."  *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1132

(N.D. Ind. 1991); *see also Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 861, 901 (S.D. Tex.

2004) (no breach of duty to monitor in absence of allegations that directors exercised de facto

control over appointees or had notice of appointees' incompetence or wrongdoing).[29]  The

Amended Complaint does not allege that the Compensation Committee Defendants had notice of

"possible misadventure" by the Plan Investment Committee nor reason to suspect the same, but

instead relies on a "formulaic recitation of the elements of a cause of action," which "will not

do."  *Twombly*, 127 S. Ct. at 1964-65.

---

[29]     To the extent that any Defendants appointed members of the Plan Investment Committee, any duty to monitor flowing from a duty to appoint fiduciaries is limited.  *See* 29 C.F.R. §2509.75-8 (where Board of Directors is responsible for the selection and retention of plan fiduciaries, Board members' own fiduciary responsibility, "and, consequently, their liability, is limited to the selection and retention of fiduciaries. . .").  A person authorized to appoint and remove fiduciaries is "not obligated to examine every action taken by [the fiduciary]" and the duty to monitor does not encompass a front-line responsibility to "monitor[] whether [company stock] was a prudent investment."  *Lingis*, 649 F. Supp. 2d 861, 882 (N.D. Ill. 2009); *see also In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d 1328, 1339 (N.D. Okla. 2003) (same).  Accordingly, the Compensation Committee or its members had no duty under the Plan's terms or the law to undermine the Plan Investment Committee or its members.

By shotgun pleading against Defendants with no fiduciary responsibility for Ambac Stock, Plaintiff accomplishes nothing but multiplying this litigation while inconveniencing these Defendants and ultimately the Court.  Regardless of whether the Court finds that the Investment Committee had discretion to remove the Ambac Stock, Count I should be dismissed as to all Defendants except for the Investment Committee members during the purported class period.

### G.   Plan Committees Are Not Proper ERISA Defendants.

Finally, Plaintiff's claims against the committees to the Plan should be dismissed for the fundamental reason that neither committee is a proper entity to be sued under ERISA.  ERISA imposes liability on "[a]ny person who is a fiduciary with respect to a plan who breaches any other responsibilities, obligations, or duties imposed upon fiduciaries . . ."  29 U.S.C. §1109(a).  In turn, ERISA defines a person as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  29 U.S.C. § 1002(9).  Plan committees are not "persons" who can be sued under ERISA for breach of fiduciary duty.  *See Tatum v. R.J. Reynolds Tobacco Co.*, Case No. 1:02CV00373, 2007 WL 1612580, at *8 (M.D.N.C. May 31, 2007) ("The language of Section 3(9) clearly and unambiguously sets out eleven categories of 'persons' subject to personal liability in a breach of fiduciary duty action under ERISA.  Given the comprehensive nature of ERISA, the omission of 'committee' from that definition cannot be considered simply a drafting oversight.  Committees are, therefore, not properly subject to ERISA breach of fiduciary duty claims.").  Because the Plan Investment and Administrative Committees Plan are not proper parties to this action, and all claims against them must be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court dismiss the Amended Complaint in its entirety with prejudice.

Dated: October 20, 2010                    Respectfully submitted,


                                           MORGAN, LEWIS & BOCKIUS LLP

                                           /s/      Gregory C Braden
                                           Gregory C. Braden (admitted pro hac vice)
                                           Christopher A. Weals (admitted pro hac vice)
                                           1111 Pennsylvania Avenue NW
                                           Washington, DC  20004
                                           Phone: (202) 739-3000
                                           Fax:    (202) 739-3001
                                           Email: gbraden@morganlewis.com
                                                  cweals@morganlewis.com


                                           Jamie M. Kohen (jk0273)
                                           101 Park Avenue
                                           New York, NY 10178-0060
                                           Phone: (212)309-6343
                                           Fax:    (212)309-6001
                                           Email: jkohen@morganlewis.com


                                           *Attorney for Defendants Ambac Plan Administrative
                                           Committee, Ambac Compensation Committee,
                                           Ambac Plan Investment Committee, Diana Adams,
                                           Gregg L. Bienstock, Jill M. Considine, Phillip N.
                                           Duff, Robert Eisman, Thomas J. Gandolfo, Anne
                                           Gill Kelly, Sean T. Leonard, William McKinnon,
                                           Douglas C. Renfield-Miller, Timothy J. Stevens,
                                           Thomas C. Theobald, Laura S. Unger, and Henry
                                           D.G. Wallace*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Memorandum of Law in support of

Motion to Dismiss the Amended Complaint has been filed and served by Notice of Electronic

Filing pursuant to Rule 5(b) (2) (E), Federal Rules of Civil Procedure on this 20th day of

October, 2010.

Stephen J. Fearon, Jr.
Caitlin Duffy
Garry T. Stevens, Jr.
32 East 57th Street, 12th Floor
New York, New York 10022

*Attorneys for Plaintiff*

/s/      Gregory C Braden
Gregory C. Braden