STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KARTHIKEYAN V. VEERA                          :
                                              :
    Plaintiff,                               :
                                              :         10 CV 4191 (HB)
        - against -                          :
                                              :         OPINION &
                                              :         ORDER
AMBAC PLAN ADMINISTRATIVE                     :
COMMITTEE, ET AL.                             :
                                              :
    Defendants.                              :
------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

    Plaintiff in this purported class action is a former employee of Ambac Financial Group, Inc. ("Ambac") who held Ambac stock as part of an employer-sponsored Savings Incentive Plan (the "Plan"). Plaintiff purports to represent a class of all Plan participants who held Ambac stock through the Plan between October 1, 2006 and July 2, 2008 (the "Class Period"). Ambac's publicly traded stock fell sharply during the Class Period, and Ambac filed for Chapter 11 bankruptcy on November 8, 2010. Plaintiff claims that the defendants breached their fiduciary duties under ERISA by continuing to offer Ambac stock as part of the Plan when they knew or should have known of Ambac's impending decline. Defendants move to dismiss. For the reasons described below, their motion is denied.

## FACTUAL BACKGROUND

    Ambac is a non-party financial services holding company whose main operating subsidiary, Ambac Assurance Corporation, sells insurance against default by issuers of public and structured finance obligations. Ambac offers an "eligible individual account plan" governed by ERISA to its employees. As part of the Plan the company agrees to match a portion of its employees' voluntary contributions. Among other options, Plan participants may, but need not, direct that their contributions be used to invest in Ambac stock.

    The Plan's Administrative Committee was charged with the "the power and duty to take all actions and to make all decisions necessary or proper to carry out its responsibilities under the plan", including "to construe and interpret the terms and provisions of the Plan and all documents which relate to the Plan." Amended Class Action Complaint ¶ 157-58. The Plan's Investment Committee had "exclusive responsibility and authority to control and manage the

1

assets of the Plan in accordance with the terms of the Plan and of the Trust." *Id.* ¶ 154.  The Compensation Committee was charged with the appointments to the two Plan committees.  *Id.* ¶ 161.  The individual named defendants were members of each of the three Plan committees.

Plaintiff contends that throughout the Class Period Defendants failed to take action to protect Plan assets from the devastation facing Ambac as a result of its heightened exposure to losses, and that Ambac was aware of its liabilities and exposure and failed to disclose those negative trends.  Plaintiff alleges that between 2004 and 2007 Ambac made a fundamental change in its business strategy and loosened and lowered its underwriting standards, exposing itself to billions of dollars of losses on high-risk transactions.  Plaintiff also alleges that Ambac improperly bolstered its reported financial results by overstating the value of its business and failing to properly mark-to-market Ambac's portfolio of high-risk securities, even as the market collapsed for the collateral underlying those securities.

### A.     Plaintiff's Claims

The Amended Complaint targets two categories of defendants, the Plan Investment Committee and Plan Administrative Committee and the individual members thereof, who allegedly violated their duty of prudence (the "Prudence Defendants"), and the Compensation Committee and the members thereof, who allegedly violated the duty of monitoring (the "Monitoring Defendants").  Count I alleges that the Prudence Defendants breached their fiduciary duties under ERISA when they  "(1) continu[ed] to offer Ambac Stock as an investment option for the Plan when it was imprudent to do so; and (2) maintain[ed] the Plan's pre-existing heavy investment in Ambac Stock when it was no longer a prudent Plan investment."  Count II alleges that the Monitoring Defendants breached their fiduciary duties by failing to adequately monitor the Prudence Defendants' performance.

Plaintiff seeks to recover (1) profits lost by investing in Ambac stock instead of other funds; (2) losses incurred by investing in Ambac stock when the price was artificially inflated; (3) losses caused by the decline in Ambac stock as the market learned the truth about Ambac's improper practices and financial problems, and (4) a constructive trust for amounts by which Plan fiduciaries benefitted as a result of their breaches.

### B.     Defendants' claims

The Defendants' principal position is that they were under no fiduciary obligation to remove or diversify the Ambac stock in the Plan. They argue that because the Plan required the

offering of Ambac stock, they had no discretion to eliminate it; since they exercised no control over the offering of Ambac stock in the Plan, the inclusion of the stock in the Plan creates no fiduciary liability for them.

### DISCUSSION

On a motion to dismiss, this Court accepts all material facts alleged in the complaint as true and construes all reasonable inferences in the plaintiff's favor. *ECA Local 134 IBEW Joint Pension Trust Fund of Chicago v. JP Morgan Chase Co.,* 553 F.3d 187, 196 (2d Cir.2009). A plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief." *Id.* at 1950.

#### A.     Whether a fiduciary duty applies

Under ERISA, a plan fiduciary is one who exercises some amount of discretionary control with respect to the management or disposition of plan assets or "has any discretionary authority or discretionary responsibility in the administration of such a plan." 29 U.S.C. § 1002(21)(A). *See also Pegram v. Herdrich*, 530 U.S. 211, 225-226 (2000). ERISA imposes a duty on plan fiduciaries to manage plan assets with prudence. 29 U.S.C. § 1104(a)(1)(B). In determining whether there has been a breach of an ERISA fiduciary duty, the threshold question is whether the defendant was acting as a fiduciary (that is, was performing a fiduciary function) when he took the action complained of. *See Pegram*, 530 U.S. at 226.

The Second Circuit has not yet determined whether language in plan documents that removes plan managers' discretion can immunize them from fiduciary responsibilities imposed by ERISA. *See In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Sec. Act (ERISA) Litig.*, No. 09 MD 2058 (PKC), 2010 WL 3448197, at *17 (S.D.N.Y. Aug. 27, 2010). District courts in this circuit have arrived at differing conclusions. *Compare In re Citigroup ERISA Litig.*, No. 07 Civ. 9790 (SHS), 2009 WL 2762708, at *10-12 (S.D.N.Y. Aug. 31, 2009), *appeal docketed*, No. 09 Civ. 3804 (holding that there is no duty to override a plan's mandate that company stock be offered as an investment option) *with Gearren v. McGraw-Hill Cos., Inc.,* 690 F.Supp.2d 254, 264 (S.D.N.Y. 2010), *appeal docketed*, No. 10 Civ.

792 ("[A] plan agreement cannot extinguish the fiduciary status of a named fiduciary simply by commanding him to take certain actions.").

The Second Circuit may soon resolve the issue, since appeals of *Gearren* and *Citigroup* are pending as I write. In the absence of guidance from the Circuit, in my view the better reasoned decisions are those that conclude that plan managers may not blindly follow plan documents in contravention of the mandates of ERISA and at the same time satisfy their fiduciary obligations .

First, ERISA requires fiduciaries to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D). Courts have interpreted this to mean that plan fiduciaries may be liable even when plan documents provide no discretion as to certain investment decisions. *See In re SLM Corp. ERISA Litig.*, No. 08 Civ. 4334 (WHP), 2010 WL 3910566, at *6 (S.D.N.Y. Sep. 24, 2010) ("ERISA does not provide fiduciaries *carte blanche* to follow plan documents under all circumstances"); *In re Morgan Stanley ERISA Litig.*, 696 F.Supp.2d 345, 357-58 (S.D.N.Y. 2009) (Sweet, J.); *Agway, Inc.Employees' 401(k) Thrift Investment Plan, et al. v. Magnuson*, No. 03 Civ. 1060 (HGM), 2006 WL 2934391, at *18 (N.D.N.Y. Oct 12, 2006) ("ERISA casts upon fiduciaries an affirmative, overriding obligation to reject plan terms where those terms would require such imprudent actions in contravention of the fiduciary duties imposed under ERISA."); *In re Polaroid ERISA Litig.*, 362 F.Supp.2d 461, 473-74 (S.D.N.Y. 2005) ("ERISA commands fiduciaries to obey Plan documents only to the extent that they are consistent with other fiduciary duties .... The fact that the Plan required investments in [company] stock does not ipso facto relieve [Defendants] of their fiduciary obligations." (internal citation and quotation marks omitted)); *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,* 83 Civ. 5401 (DC), 1997 WL 278116, at *2, (S.D.N.Y. May 22, 1997) ("An ERISA fiduciary cannot 'hide' behind the terms of a contract to insulate itself from liability for breaching its fiduciary duty."). *See also In re Ford Motor Co. ERISA Litig.,* 590 F.Supp.2d 883, 889 (E.D.Mich. 2008) ("Indeed, ERISA would be almost impotent if it permitted settlers to exempt their fiduciaries from its requirements with a simple stroke of the pen.").

While not addressing this precise issue, the Supreme Court has said that "trust documents cannot excuse trustees from their duties under ERISA and ... trust documents must generally be construed in light of ERISA's policies." *Central States, Southeast and Southwest Areas Pension*

4

*Fund v. Central Transport, Inc.*, 472 U.S. 559, 568 (1985). *See also Laborers Nat. Pension Fund v. Northern Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 322 (5th Cir. 1999) ("A fiduciary may not discharge his duties in a manner inconsistent with ERISA provisions. . . . In case of a conflict, the provisions of the ERISA policies as set forth in the statute and regulations prevail over those of the Fund guidelines.")

Second, even if ERISA's fiduciary duties did not prevail over inconsistent plan documents, the Plan language in this case, which was effective as of January 1, 2006, does not support a finding that all fiduciary duty was removed with respect to the offering of Ambac stock. Defendants point to the Plan definitions, which state that "the Ambac Financial Group, Inc. Stock Fund shall be an Investment Fund." Compl. Ex. A at 6. Similarly, the 2008 Summary Plan Description (which was not even effective until October 1, 2008) stated that "[t]he Plan requires that the Ambac Financial Group, Inc. Stock fund be offered as an Investment Fund." Decl. Jamie M. Kohen Supp. Mot. Dismiss, Ex. C at Q24, p. 14.

These provisions are similar to the plan language in cases finding no fiduciary duty, but not the same. In *Citigroup* the plan required that "the Citigroup Common Stock Fund *shall be permanently maintained* as an Investment Fund under the Plan." 2009 WL 2762708, at *7 (emphasis by Judge Stein in his opinion). To be sure, in *In re American Express Co. ERISA Litig.*, the plan, like the one here, mandated simply that the "Trust Fund shall consist in part of the Company Stock Fund." No. 08 Civ. 10834 (JGK), 2010 WL 4371434, at *9 (S.D.N.Y. Nov. 2, 2010). But the *In re American Express* plan also expressly precluded the Investment Committee's management authority over company stock. *Id.* at 10 ("the Plan grants the Investment Committee management authority over Plan assets '[e]xcept for those Investment Funds that are specified in the Plan instrument,' such as the Company Stock Fund.") (quoting the plan documents). Defendants have not pointed to similar language in this case expressly removing discretionary authority. To the contrary, the Trust Agreement, which is expressly adopted as part of the Plan, see Compl. Ex. A at 1, provided that in selecting investment options to offer under the Plan, Ambac "shall use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use." Compl. Ex. E at 2. The language Defendants cite fails to remove the fiduciary duty concept imposed by ERISA, nor does it override the duty of prudence expressly

5

imposed by the Trust Agreement. In short, it is not at all clear that the language at issue here immunized Defendants from fiduciary liability.

Third, reference to the purpose underlying the enactment of ERISA confirms this conclusion. ERISA was the culmination of legislative efforts aimed at providing "a comprehensive, integrated regulatory approach [that] would handle adequately the interrelated problems of deficiencies and abuses in private plans which cause deprivation of retirement benefits on which workers rely." 120 Cong. Rec. 29934 (Aug. 22, 1974). Senator Jacob Javits of New York, the major driver of pension reforms in the 1960s and early 1970s, introduced the bill that would become ERISA by noting that it would:

> [ensure] that pension promises are kept and reasonable expectations built upon those promises are not disappointed. . . [and] establish a more positive climate of respect for, and affirmation of, the worker's contribution to our economic progress. The establishment of this climate is indispensable if we are to maintain our economic growth and build greater confidence in our Nation's ability to weather the economic problems we now confront.

*Id.* at 29944. These concerns, which remain relevant today, compel the conclusion that the fiduciary duties imposed by ERISA cannot be obviated or torn assunder by the drafters of plan documents.

Defendants also oppose what they suggest is in essence a claim for breach of the duty to diversify. It is uncontroverted that ERISA exempts Employee Stock Ownership Plans[1] from ERISA's diversification requirement, 29 U.S.C. § 1104(a)(1)(c), as well as "the prudence requirement (only to the extent that it requires diversification)." 29 U.S.C. § 1104(a)(1)(B); *Gearren v. McGraw-Hill Cos., Inc.,* 690 F.Supp.2d 254, 264 (S.D.N.Y. 2010) Defendants' liability may not rest on the duty to diversify, nor have Plaintiffs claimed otherwise. Pl. Mem. Opp. Mot. Dismiss 19.

### B.    Whether a presumption of prudence requires dismissal of the case

Even if they were under a fiduciary duty with respect to the offering of Ambac stock, Defendants argue in the alternative, they are protected by the presumption of prudence applicable to fiduciaries who invest in employer stock.

---

[1] An Employee Stock Ownership Plan is a type of Eligible Individual Account Plan designed to invest primarily in qualifying employer securities. *See* 29 U.S.C. § 1107(d)(3)(A)(ii), 1107(d)(6)(A).

While the Second Circuit may decide this issue soon, there remains a vacuum of controlling precedent as to the applicability of the so-called "*Moench* presumption." *See In re American Express Co. ERISA Litig.*, No. 08 Civ. 10834 (JGK), 2010 WL 4371434, at *11 (S.D.N.Y. Nov. 2, 2010). Under *Moench* courts presume that "the fiduciary's decision to continue to offer an investment in the employer's securities is reasonable and prudent", but that presumption may be overcome by showing "(1) that there was a 'precipitous decline' in the price of the stock and (2) that the fiduciary had 'knowledge of its impending collapse.'" *See SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *7 (S.D.N.Y. Sep. 24, 2010) (*citing Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995). *Moench* was decided on summary judgment, and while some courts have found it applicable at this stage, others have not. *See Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d at 357-59 (addressing the split in authority and declining to apply the *Moench* presumption at the motion to dismiss stage). A plaintiff alleging a breach of fiduciary duty, on the facts alleged here, deserves the opportunity to overcome the presumption. Further, a strict application of *Moench* is inappropriate at the motion to dismiss stage. *See Morgan Stanley*, 696 F. Supp. 2d at 359.

In this case the plaintiff points to a number of facts it claims substantiate its claim that continuing to offer Ambac stock was imprudent. Specifically, it is alleged that throughout the Class Period, Ambac was exposed to billions of dollars of losses on high-risk transactions and had significantly loosened and lowered its underwriting standards. Compl. ¶ 7. Throughout 2006, Ambac's exposure and reliance on revenues from structured finance products such as RMBSs and CDOs grew while the less risky public finance business accounted for a smaller and smaller percentage of the Company's revenues. *Id.* ¶ 188. On October 10, 2007, Ambac estimated that it had an unrealized loss of $743 million on its credit derivative portfolio, *id.* ¶ 195, and this announcement precipitated a drastic drop in share price. *Id.* ¶ 199. Two weeks later it announced a third quarter net loss of $360.6 million, attributing the loss to the credit derivative exposures announced on October 10, 2007. *Id.* ¶ 200. Ambac stock, which had closed as high as $96.08 during the Class Period, fell to approximately $25 per share following the October announcements. *Id.* ¶¶ 199-201. The price of Ambac stock fell from a Class Period high of $96.08 to $1.05 by the end of the Class Period,[2] and is now trading at around $.60 a

---

[2] Even were the *Moench* presumption applied here, this drop, representing a 99% decline, may represent a sufficiently "precipitous decline" to overcome it. *See Moench*, 62 F.3d at 557 (finding a "precipitous decline" when

share.  *Id.* at ¶ 8.  On January 18, 2008 Fitch downgraded Ambac's credit ratings, making Ambac the first bond insurer to lose its "AAA" rating.  *Id.* ¶ 206.

On January 16, 2008, yet another announcement disclosed a $5.4 billion loss on Ambac's CDO portfolio for the fourth quarter of 2007, along with other losses which come to some $32.82 per share for the fourth quarter of 2007.  *Id.* ¶ 203.  On April 23, 2008, Ambac announced a $1.6 billion loss for the first quarter of 2008, a $1.7 billion los on its CDO exposures, and a credit-impairment charge of $1 billion.  *Id.* ¶ 111.  Defendant Leonard, a senior vice president and Chief Financial Officer at Ambac during the Class Period, announced that "on some exposures . . . losses could reach as high possibly as 80%."  *Id.* ¶ 112.  By July 2, 2008, the last day of the Class Period, Ambac stock had declined to $1.05 and trading was temporarily halted.  *Id.* ¶ 214.

Ambac had improperly bolstered its reported financial results by overstating the value of its business and failing to properly mark-to-market Ambac's portfolio of high-risk securities.  *Id.* ¶ 7.  This lead to the Plan participants' purchase of Ambac stock at an inflated price.  *Id.* ¶ 190-93.  In January 2008, Ambac had been notified that Massachusetts regulators were investigating whether Ambac failed to disclose its guarantees of troubled structured finance investments to issuers of municipal bonds in the state.  *Id.* ¶ 209.  Around that time, the Wisconsin Office of the Commissioner of Insurance also began an investigation into Ambac Assurance in an effort to protect Ambac investors from dire loss.  *Id.* ¶ 210.

These factual allegations suffice to show that Plaintiffs have "raise [d their] right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Twombly*, 550 U.S. at 555).

### C.     The Duty to disclose

Defendants argue that to it had no duty to disclose and any such allegations should be dismissed.  The Amended Complaint does not so much appear to allege any violation of the duty to disclose as allege various disclosures or non-disclosures as background factual material; nonetheless, defendants are correct that they had "no affirmative duty under ERISA to disclose information about the company's financial condition to plan participants."  *SLM Corp. ERISA*

---

defendant's stock lost 98% of its value over a two-year period); *Polariod*, 362 F. Supp. 2d at 475 (finding a "precipitous decline" where Polaroid's stock declined from $25.88 to $.01).

*Litig.*, 2010 WL 3910566, at *10.  Any alleged failure to disclose does not by itself expose Defendants in this case to liability.

> **D.     The failure to monitor claim**

Defendants attack the failure to monitor claim against the Compensation Committee. They contend that it consists of mere conclusory allegations that are derivative of the claims against the Plan committees.  This Court has held that allegations that "no system was in place to review and evaluate the performance of [] appointees or that potential breaches were otherwise going unaddressed" suffice at this stage to state a claim against fiduciaries for violation of the duty to monitor.  *Morgan Stanley ERISA Litig.*, 696 F.Supp.2d at 366-67 (*citing Polaroid*, 362 F.Supp.2d at 477).  Here, as in *Morgan Stanley*, the Monitoring Defendants are alleged to have simply stood by and watched the value of Ambac stock decline  precipitously.  Based on such statements this Court cannot help but conclude that monitoring fiduciaries failed to provide sufficient attention, if any, to the risks of the continued purchase and retention of Ambac stock. *See id.* at 366.

> **E.     Whether the Committees are proper defendants**

Defendants argue that Plan Committees—as opposed to the individually named members thereof—are not proper ERISA defendants because ERISA imposes liability only on "persons", and its definition of "person" does not include "committee." *See* 29 U.S.C. § 1002(9).  As Defendants would have it, the omission of "committee" is not a drafting oversight, and precludes liability for a committee per se.  However, section 1002(9) is broad and defines person loosely to include such informal entities as an "unincorporated organization, association, or employee organization."  *Id.   See also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F.Supp.2d 511, 617 (S.D.Tex. 2003) (rejecting the argument that a plan committee could not be held liable as an unincorporated association and noting that "ERISA . . . expressly contemplates that when an administrative committee acts . . . as a fiduciary in breach of its fiduciary duties, it may be sued.").  *See also Agway, Inc.Employees' 401(k) Thrift Investment Plan, et al. v. Magnuson*, No. 03 Civ. 1060 (HGM), 2006 WL 2934391, at *16, 19 (N.D.N.Y. Oct 12, 2006) (finding claims for breach of ERISA's fiduciary duties adequately stated against plan administrative and investment committees).  Defendants' remaining claims with respect to the fiduciary status of particular Committees are unavailing, since Plaintiff claims that under the Plan documents each had specific fiduciary duties, and ERISA appears to contemplate fiduciary status in this context

9

not just for those with authority over investments, but also those with "discretionary responsibility in the administration of [] a plan." 29 U.S.C. § 1002(21)(A). *See also Pegram*, 530 U.S. at 225-26.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED. The Clerk of the Court is instructed to close this motion and remove it from my docket.

SO ORDERED
January 6, 2011
New York, New York

*[signature]*
Hon. Harold Baer, Jr.
U.S.D.J.

Case 1:10-cv-04191-HB   Document 51   Filed 01/06/11   Page 10 of 10

10